1   Carolyn H. Cottrell (SBN 166977)
    David C. Leimbach (SBN 265409)
2   Michelle S. Lim (SBN 315691)
    Scott L. Gordon (SBN 319872)
3   SCHNEIDER WALLACE
    COTTRELL KONECKY
4   WOTKYNS LLP
    2000 Powell Street, Suite 1400
5   Emeryville, California 94608
    Telephone: (415) 421-7100
6   Facsimile:  (415) 421-7105

7   Attorneys for Plaintiff, the Putative Classes
    and Collective

8

9              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  HAROLD JONES, individually and on        Case No. _____
    behalf of all others similarly situated,
12                                            **CLASS AND COLLECTIVE ACTION**
                Plaintiff,                    **COMPLAINT**
13
        vs.                                   **(1) Violations of the Fair Labor Standards Act**
14                                                **(29 U.S.C. §§ 201 *et seq*.)**
                                              **(2) Failure to Pay for All Hours Worked (Cal.**
15  CERTIFIEDSAFETY, INC., ANDEAVOR              **Labor Code § 204);**
    F/K/A TESORO CORPORATION, and            **(3) Failure to Pay Minimum Wage &**
16  TESORO REFINING & MARKETING                  **Liquidated Damages (Labor Code §§**
    COMPANY LLC,                                 **1182.11, 1182.12, 1194,1197, and 1197.1)**
17                                            **(4) Failure to Pay Overtime Wages (Cal. Labor**
                Defendants.                       **Code § 510);**
18                                            **(5) Failure to Authorize and Permit and/or**
                                                 **Make Available Meal and Rest Periods (Cal.**
19                                                **Labor Code §§ 226.7 and 512);**
                                              **(6) Failure to Reimburse for Necessary**
20                                                **Business Expenditures (Cal. Labor Code §**
                                                 **2802);**
21                                            **(7) Failure to Provide Timely and Accurate**
                                                 **Itemized Wage Statements (Cal. Labor**
22                                                **Code § 226);**
                                              **(8) Waiting Time Penalties (Cal. Labor Code §§**
23                                                **201-203);**
                                              **(9) Failure to Pay Minimum Wage (RCW**
24                                                **49.46.090, RCW 49.12.150);**
                                              **(10) Failure to Pay Overtime Wages (RCW**
25                                                **49.46.130);**
                                              **(11) Failure to Authorize and Permit and/or**
26                                                **Make Available Meal and Rest Periods**
                                                 **(RCW 49.12.020);**
27                                            **(12) Failure to Pay Unpaid Wages on**
                                                 **Termination (RCW 49.48);**
28

---

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

(13) **Willing Refusal to Pay Wages (RCW 49.52.050);**
(14) **Violations of the Washington's Consumer Protection Act (RCW 19.86);**
(15) **Failure to Pay Minimum Wage (Minn. Stat. §§ 177.21 *et seq.*);**
(16) **Failure to Pay Overtime Wages (Minn. Stat. §§ 177.21 *et seq.*);**
(17) **Failure to Pay for All Hours Worked (Minn. Stat. § 181.14);**
(18) **Unpaid Wages on Termination (Minn. Stat. § 181.14);**
(19) **Failure to Keep Accurate Payroll Records (Minn. Stat. § 177.30);**
(20) **Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);**
(21) **Penalties Pursuant to § 2699(a) of the California Private Attorneys General Act; and**
(22) **Penalties Pursuant to § 2699(f) of the California Private Attorneys General Act**

**DEMAND FOR JURY TRIAL**

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Harold Jones ("Jones" or "Plaintiff"), on behalf of himself and all others similarly situated, complains and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this class and collective action on behalf of himself and other similarly situated individuals who have worked for CertifiedSafety, Inc. ("CertifiedSafety"), Andeavor f/k/a Tesoro Corporation, and Tesoro Refining & Marketing Company LLC (collectively, "Tesoro;" CertifiedSafety and Tesoro are collectively referred to as "Defendants") as non-exempt, hourly employees, including Safety Attendants and Safety Foremen. CertifiedSafety and Tesoro employ Plaintiff and putative Class and Collective members as joint employers. Plaintiff challenges CertifiedSafety's and Tesoro's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and California, Washington, and Minnesota wage and hour laws.

2.      This is a class action against Defendants to challenge their policies and practices of: (1) failing to compensate Plaintiff and putative Class and Collective members for all hours worked; (2) failing to pay Plaintiff and putative Class and Collective members minimum wage for all hours worked; (3) failing to pay Plaintiff and putative Class and Collective members overtime and double time wages; (4) failing to authorize and permit Plaintiff and the putative Class members to take meal and rest breaks to which they are entitled by law and pay premium compensation for missed breaks; (5) failing to reimburse Plaintiff and putative Class and Collective members for necessary business expenditures; (6) failing to provide Plaintiff and putative Class members accurate itemized wage statements; and (7) failing to timely pay Plaintiff and putative Class members wages upon the termination of employment.

3.      Plaintiff and members of the putative Class and Collective are current and former non-exempt, hourly Safety Attendants and Safety Foremen, who worked for Defendants throughout the United States, including but not limited to California, Washington, and Minnesota.  These employees provide support for Defendants' operations, including but not limited to safety

1  supporting operations and protocols, and identifying, mitigating, and reporting potential safety

2  hazards at Defendants' worksites.

3      4.    Plaintiff and putative Class and Collective members work long hours.  Plaintiff and

4  putative Class and Collective members are regularly scheduled to work, and in fact work, twelve

5  hour shifts for seven or more consecutive days.  Beyond the scheduled hours for which Plaintiff

6  and putative Class and Collective members are scheduled to work, Plaintiff and putative Class and

7  Collective members are also required to work before and after scheduled shifts, without

8  compensation.  Additionally, Plaintiff and putative Class and Collective members are required to

9  attend day-long or multi-day training sessions, and are not compensated for their time spent in these

10  trainings or for their time traveling to the training sites.

11      5.    Defendants assign Plaintiff and putative Class and Collective members to work at

12  specific refineries for periods ranging up to several months. Defendants initiate contact and enter

13  into employment agreements with Class and Collective members in their home states, including

14  California, to arrange the assignments and related training.  This is true even for assignments outside

15  Class and Collective members' home states.

16      6.    CertifiedSafety and Tesoro jointly require Plaintiff and putative Class and Collective

17  members to attend training in California.  Putative Class and Collective members are required to

18  attend training in the State of California before job assignments, even when the job assignment was

19  to take place outside the State of California.  The pre-assignment training is controlled, dictated,

20  and conducted by the particular refinery, including Tesoro, can last up to an entire day, and is

21  required by Defendants. Moreover, CertifiedSafety and Tesoro jointly negotiated and consummated

22  employment agreements with Plaintiffs within the State of California for each assignment. On this

23  basis, an employment relationship exists in California between Plaintiff, putative California Class

24  members, and Defendants. Defendants, however, do not compensate Class and Collective members

25  for all of their time spent in pre-assignment training, or the time it takes Class and Collective

26  members to travel to training sessions.

27

28

7.     Following pre-assignment training, Plaintiff and putative Class and Collective members travel to work locations at the designated refinery, often far from home and out of state, without adequate reimbursement.  Defendants set the terms for this inadequate reimbursement.

8.     Once Plaintiff, Class, and Collective members  report to and begin their work assignments, Plaintiff and putative Class and Collective members are not paid minimum wage for all hours worked, overtime rates or double time rates, as appropriate, for all hours worked above eight per day and forty per week.  Plaintiff and putative Class and Collective members are also routinely denied meal and rest periods.  Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they actually work and the amount of wages and overtime to which they are entitled and for which they should be compensated.  Nor are Plaintiff and putative Class and Collective members paid all amounts owed following voluntary or involuntary termination of employment.

9.     Plaintiff and putative Class and Collective members must also pay work expenses out of pocket, without adequate reimbursement.  For example, Plaintiff and the putative Class and Collective are not reimbursed for tools and protective gear necessary to safely complete their jobs. Further, while Plaintiff and putative Class and Collective members may receive a per diem to mitigate the cost of lodging and other work related expenses when working at refinery sites far from home, the amount allocated is regularly insufficient to cover all these expenses. Plaintiff and Class and Collective members are not adequately compensated for travel expenses to and from worksites.

10.     As a result of these violations, Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the FLSA, as well as the wage, hour, labor, and other applicable laws of the States of California, Washington, and Minnesota, as described herein.

11.     Plaintiff seeks full compensation on behalf of himself and all others similarly situated for all unpaid wages, including overtime and double time, all denied meal and rest periods, unreimbursed business expenses, inaccurate wage statement penalties, waiting time penalties, and penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").

12.     Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution.

13.     Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA and applicable laws of the States of California, Washington, and Minnesota, as described herein.

**PARTIES**

14.     Plaintiff and putative Class and Collective members are current and former Safety Attendants and Safety Foremen who work for Defendants throughout the United States, including but not limited to the States of California, Washington, and Minnesota.

15.     Plaintiff is an individual over the age of eighteen, and at all times mentioned in this Complaint was a resident of the State of California.  Plaintiff was employed by CertifiedSafety as a Safety Attendant from 2011 to the 2017.

16.     Plaintiff is informed, believes, and alleges that CertifiedSafety is an American company that provides skilled safety personnel to clients operating oil refineries.  CertifiedSafety provides services to clients with oil refineries throughout the United States, including California, Washington, and Minnesota. CertifiedSafety maintains its headquarters in League City, Texas, and does business throughout California, Washington, and Minnesota.  Plaintiff is further informed, believe, and thereon alleges that CertifiedSafety employs hourly, non-exempt Safety Attendants and Safety Foreman throughout the United States, including in California, Washington, and Minnesota.

17.     Plaintiff is informed, believes, and alleges that Defendant Andeavor f/k/a Tesoro Corporation is an American corporation that refines and markets petroleum products. On information and belief, Andeavor f/k/a Tesoro Corporation operates oil refineries in California, Washington, Alaska, Minnesota, and the United States, where Plaintiff and the putative Class and Collective members work in safety roles. Andeavor f/k/a Tesoro Corporation maintains its headquarters in San Antonio, Texas, and does business in California, Washington, and Minnesota. Plaintiff worked for CertifiedSafety and Andeavor f/k/a Tesoro Corporation as joint employers at one or more Andeavor/Tesoro refineries in California in approximately June 2017. Plaintiff worked for CertifiedSafety and Andeavor f/k/a Tesoro Corporation as joint employers at one or more Andeavor/Tesoro refineries in Washington from approximately March 2015 to April 2015. Plaintiff

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

worked for CertifiedSafety and Andeavor f/k/a Tesoro Corporation as joint employers at one or more refineries in Minnesota now owned by Andeavor/Tesoro from approximately September 2016 to October 2016.

18.    Plaintiff is informed, believes, and alleges that Defendant Tesoro Refining & Marketing Company LLC is an American company that refines and markets petroleum products. On information and belief, Tesoro Refining & Marketing Company LLC is a related entity to Andeavor f/k/a Tesoro Corporation. On information and belief, Tesoro Refining & Marketing Company LLC operates oil refineries in California, Washington, Minnesota, and the United States, where Plaintiff and the putative Class and Collective members work in safety roles. Tesoro Refining & Marketing Company LLC maintains its headquarters in San Antonio, Texas, and does business in California, Washington, and Minnesota. Plaintiff worked for CertifiedSafety and Tesoro Refining & Marketing Company LLC as joint employers at one or more Andeavor/Tesoro refineries in California in approximately June 2017. Plaintiff worked for CertifiedSafety and Tesoro Refining & Marketing Company LLC as joint employers at one or more Andeavor/Tesoro refineries in Washington from approximately March 2015 to April 2015. Plaintiff worked for CertifiedSafety and Tesoro Refining & Marketing Company LLC as joint employers at one or more refineries in Minnesota now owned by Andeavor/Tesoro from approximately September 2016 to October 2016.

19.    At all relevant times, Defendants have done business under the laws of the United States, including California, Washington, and Minnesota, as well as within this judicial district. Defendants, and each of them, have employed Plaintiff and putative Class and Collective members in California, and within in this judicial district.   At all relevant times, Defendants have been Plaintiff's "employer" within the meaning of the FLSA, and California, Washington, and Minnesota law.

**JOINT EMPLOYER ALLEGATIONS**

20.    Plaintiff is informed and believes that CertifiedSafety and Tesoro are or were the joint employers of Plaintiff and members of the putative Classes and Collective for purposes of this action under the FLSA, and California, Washington, and Minnesota wage and hour laws.

21.   Beginning with training, Tesoro and CertifiedSafety jointly require members of the Classes and Collective to attend mandatory, uncompensated training in the member's home state. Defendants jointly control, dictate, and conduct this training. Plaintiff was required to attend mandatory, uncompensated training for one more Defendants in the State of California.

22.   Following training, Defendants control the day-to-day work experiences for these workers. Plaintiff and members of the Classes and Collective are typically assigned for extended periods to particular refineries, including Tesoro (up to several months), where they work closely with and under the supervision of refineries' employees.

23.   When Plaintiff and members of the putative Classes and Collective work at a particular oil refinery, they are employed by CertifiedSafety and the company or companies that own(s) and/or operate(s) the refinery as joint employers, including Tesoro. For example, when Plaintiff worked at the Tesoro Anacortes Refinery in Anacortes, Washington, he was jointly employed by CertifiedSafety and Tesoro.

24.   Plaintiff is informed and believes that the acts and omissions alleged herein were performed by, and/or attributable to, CertifiedSafety and Tesoro each acting as agents and/or employees, and/or under the direction and control of each of the other, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

25.   Plaintiff is informed and believes, and thereon alleges, that Tesoro controls and/or supervises, directly and/or indirectly, the work of Plaintiff and members of the putative Classes and Collective.

26.   Specifically, CertifiedSafety's refinery clients, including Tesoro: (1) determine the job duties to be performed by Plaintiff and members of the putative Classes and Collective; (2) determine the work schedules and shifts for Plaintiff and members of the putative Classes and Collective; (3) determine the safety procedures followed by Plaintiff and members of the putative Classes and Collective; (4) maintain a timekeeping process and track the working hours of Plaintiff and members of the putative Classes and Collective; (5) set the rate of pay for Plaintiff and members of the putative Classes and Collective working at the oil refinery locations; (6) make all decisions

1  concerning reimbursement for travel costs and per diems to Plaintiff and members of the putative

2  Classes and Collective; (7) set the budget of labor hours for each project; (8) conduct all pre-project

3  training for each work assignment; and (9) make the decision to withhold compensation time spent

4  in mandatory training.

5      27.    CertifiedSafety's refinery clients, including Tesoro, direct and monitor every aspect

6  of the daily work of Plaintiff and members of the putative Classes and Collective, including the job

7  duties and scope of jobs. The refineries, including Tesoro, control day-to-day activities, specifying

8  how each particular task is to be performed. The refineries, including Tesoro, dictate exact

9  procedures and protocols for each job assignment, including but not limited to fire watching

10  (monitoring welding with a fire extinguisher or water hose to mitigate fire hazards), traffic flagging,

11  and hole watching (ensuring the safety of a co-worker in a confined space), and specify and provide

12  the equipment that is to be used. The refineries, including Tesoro, set the paperwork requirements

13  that must be completed to document each task. The refineries, including Tesoro, make specific work

14  assignments for each member of the putative Classes and Collective, dictating which task(s) they

15  will complete and where they will work at the refinery sites. The refineries, including Tesoro,

16  dictate where Plaintiff and members of the putative Classes and Collective must park their vehicles

17  when they arrive at the refinery, where they must enter the refinery, and where and when they must

18  use a shuttle to travel around the refinery.

19      28.    Upon information and belief, CertifiedSafety's refinery clients, including Tesoro,

20  also require Plaintiff and members of the putative Classes and Collective to comply with additional

21  training requirements, beyond pre-assignment trainings. Tesoro requires completion of specific

22  training sessions, unilaterally provides these trainings to Plaintiff and members of the putative

23  Classes and Collective, and decide whether the trainings are paid.

24      29.    CertifiedSafety's refinery clients, including Tesoro, unilaterally set the schedule,

25  shifts, and hours worked by Plaintiff and members of the putative Classes and Collective. The

26  refineries, including Tesoro, determine when these workers can clock in, when they can take a meal

27  break or rest break (if at all), and when they can clock out. The refineries, including Tesoro, dictate

28

when they can use the restroom. The refineries, including Tesoro, set the schedules, shifts, and hours worked for Plaintiff and members of the putative Classes and Collective so that their work coincides with the schedules, shifts, and hours worked for the refineries' in-house employees. The refineries, including Tesoro, require Plaintiff and members of the putative Classes and Collective to perform pre-shift and post-shift work off-the-clock and without pay, and require these workers to work or remain under employer control during meal and rest breaks.

30.     The refineries, including Tesoro, impose detailed safety protocols for Plaintiff and members of the putative Classes and Collective for each project. The refineries, including Tesoro, unilaterally determine the safety procedures for the work performed. The refineries, including Tesoro, have mandatory safety trainings and set the specific requirements for each task to be done in a safe manner. The refineries, including Tesoro, dictate the amount and level, as well as types, of personal protective equipment Plaintiff and members of the putative Classes and Collective are required to use. The refineries, including Tesoro, specify when the safety equipment can be donned and doffed.

31.     The refineries, including Tesoro, maintain a timekeeping process and track the hours worked by Plaintiff and members of the putative Classes and Collective. The refineries, including Tesoro, require Plaintiff and members of the putative Classes and Collective to badge in-and-out of the refinery sites, using the refineries' badging systems. With this badging system, the refineries, including Tesoro, monitor and track the hours worked and the precise movements of members of the putative Classes and Collective throughout the massive refinery operations.

32.     The refineries, including Tesoro, have the power, directly and indirectly, to determine and set the rate of pay for Plaintiff and members of the putative Classes and Collective. The refineries, including Tesoro, determine, approve, and cap the reimbursement amount paid to Plaintiff and members of the putative Classes and Collective for travel. The refineries, including Tesoro, determine whether jobs are classified as "commute" jobs, which controls whether Plaintiff and members of the putative Classes and Collective are reimbursed for lodging and meals. The refineries, including Tesoro, alone determine and set the rate of per diem to cover lodging and meals

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

1   expenses. The refineries, including Tesoro, also determine Plaintiff's and putative Classes and
2   Collective members' compensation, if any, for time they spend taking shuttles from location to
3   location within the refinery sites.

4       33.    The refineries, including Tesoro, maintain a high degree of control over Safety
5   Attendant and Safety Foreman staffing for each oil refinery location, determining the number of
6   labor hours and staffing levels required to perform a project. The refineries, including Tesoro,
7   require CertifiedSafety to perform work within the labor hours budgeted by the refineries. The
8   refineries, including Tesoro, specify the staffing, labor budgeting, and labor hours in their contracts
9   with CertifiedSafety.

10      34.    As employers of Plaintiff and members of the putative Classes and Collective
11  throughout the relevant time periods as outlined below, Defendants, and each of them, are solely,
12  jointly, and severally liable for back pay and other economic damages, including statutory penalties,
13  owed to Plaintiff and members of the putative Classes and Collective under common law and by
14  statute.

15      35.    Throughout this Complaint, any reference to the "Defendant" or to "Defendants" is
16  intended to refer to CertifiedSafety and Tesoro, jointly as employers.

17      36.    Defendants' annual gross sales exceed $500,000.

18                          **JURISDICTION AND VENUE**

19      37.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §
20  1331.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28
21  U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

22      38.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial
23  part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

24      39.    Defendants, and each of them, employed Plaintiff, Class, and Collective members in
25  the State of California.  Defendants communicated with Plaintiff and other California Class and
26  Collective members while they were in California, and induced them to enter into employment
27  relationships and travel to the refinery locations throughout the United States, including California.

28

1    Plaintiff and putative Class and Collective members in California enter into employment

2    agreements with Tesoro in California.  And even when work to be performed at refinery sites was

3    outside of California, Tesoro has required Plaintiff and putative Class and Collective members in

4    California to complete training in California. Thus, Tesoro has required Plaintiff and putative Class

5    and Collective members in California to work in California, and have controlled and dictated the

6    terms of such work. On this basis, an employment relationship exists in California between Plaintiff

7    and putative California Class and Collective members in California and each of the Defendants.

8                                    **EQUITABLE TOLLING**

9            40.    The limitations period applicable to Plaintiff's individual claims, as well as the claims

10   of putative Class and Collective members, against Defendants was tolled from April 21, 2017 until

11   the date Plaintiff first initiated this action by the pendency of the class action claims in the related

12   case of *Harold Jones, et al. v. CertifiedSafety*, Northern District of California, Court Case Number

13   3:17-cv-02229-EMC (filed April 21, 2017).

14                                   **FACTUAL ALLEGATIONS**

15                        **Defendants and their Safety Attendant Employees**

16           41.    CertifiedSafety works with refineries, including Tesoro, to provide skilled personnel

17   who specialize in planning, implementing, and executing safety protocols for refinery operations.

18   CertifiedSafety provides services throughout the United States, including but not limited to

19   California, Washington, and Minnesota. These workers are the Plaintiff, Classes, and Collective at

20   issue in this case (hereinafter referred to as "Safety Attendants").

21           42.    Plaintiff works for Defendants as Safety Attendants.[1] Plaintiff's primary duties

22   include, but are not limited to: monitoring and recording air pressure to ensure that oxygen levels

23   are safe for other workers at the refinery site; cleaning and organizing the refinery site; monitoring

24   and recording the amount of employees entering and exiting the work site; and supervising hot

25   work to prevent combustion near refinery sites.

26

27   _____

     [1] While Plaintiff is a former employee of Defendants, for ease of reading, allegations are presented

28   in the present tense.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

43.     Plaintiff, Class, and Collective members are classified as hourly, non-exempt employees and are paid an hourly rate for their services.  Plaintiff worked at various work sites operated by clients of CertifiedSafety throughout the United States, including but not limited to California, and Washington.

44.     Defendants dispatch Safety Attendants to various locations throughout the United States, including in California, Washington, and Minnesota. For each assignment, Defendants determine the hourly rate to be paid and the duration of the project.

**Training Required of Safety Attendants**

45.     These sophisticated job duties require training.  CertifiedSafety requires its Safety Attendants to undergo mandatory training that consists of two eight-hour days at the beginning of their employment, as well as an additional eight-hour day of continuing training each year.  In addition to learning about the responsibilities of the Safety Attendant position, this training provides information on specific CertifiedSafety policies and procedures, such as its meal and rest break policies, cell phone policies, CertifiedSafety's Code of Conduct, as well as CertifiedSafety's sexual harassment and discrimination policies, just to name a few.  This training is described as an "orientation" to Safety Attendants' employment with CertifiedSafety, where Safety Attendants fill out "new hire" paper work such as I-9s and W-4s.  This training is important to CertifiedSafety's ability to market its services to the oil and drilling industry, because CertifiedSafety represents that *its* Safety Attendants go through this significant training. As a matter of policy, none of this training time is compensated, nor are Safety Attendants reimbursed for any expenses relating to this mandatory training.

46.     Upon information and belief, Defendants also require Safety Attendants to undergo training before each job assignment, typically no more than one day of eight hours.  These pre-assignment trainings are conducted by the refineries, including Tesoro, and refineries are responsible for the content and duration of said training. Safety Attendants' ability to accept the assignment is conditioned on their completion of the training. These pre-assignment trainings cover specific topics and issues that the workers will encounter in the particular assignment, and are

1   conducted near the home of the Plaintiff and putative Class and Collective members, prior to their

2   dispatch to the applicable refinery site. The refineries, including Tesoro, required Plaintiff to

3   complete pre-assignment trainings in California, typically in Benicia. On information and belief,

4   other putative Class and Collective members in California are required to complete pre-assignment

5   training in California prior to their dispatch by Defendants. As a matter of policy, none of this

6   training time is compensated, nor are Safety Attendants reimbursed for any expenses relating to this

7   mandatory training.

8       47.     Defendants also require Plaintiff and putative Class and Collective members to

9   complete additional training at the refinery locations during assignments.   This time is not

10  compensated.

11                      **A Typical Day for Safety Attendants**

12      48.     Safety Attendants work long hours – typically working twelve hours a day for thirteen

13  consecutive days, followed by one day off, and then another thirteen consecutive days of twelve-

14  hour shifts.  Safety Attendants typically work this schedule until a given project is complete, which

15  generally lasts between one and three months.

16      49.     Safety Attendants generally work one of two twelve-hour shifts in a twenty-four hour

17  period.  For example, one group of Safety Attendants may be scheduled to work from, for example,

18  7:00 a.m. to 7:00 p.m., and another group of Safety Attendants is scheduled to work from 7:00 p.m.

19  to 7:00 a.m. These schedules are not set by CertifiedSafety, but by the refineries, including Tesoro,

20  which CertifiedSafety is contractually obligated to implement. But regardless of which shift Safety

21  Attendants work, the job duties and responsibilities are the same, as is the process for reporting to

22  work, beginning the workday, taking meal and rest breaks, and ending the workday.

23      50.     Safety Attendants' days begin with a daily commute from their hotel room to a

24  parking lot.[2] Depending on the facility, the parking lot may be on site or off site.  If the parking lot

25  is off site, Safety Attendants will park their car and put on their fire-retardant protective gear.  This

26

27  _____

28  [2] More often than not, Safety Attendants work at remote locations requiring considerable travel and temporary living arrangements.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

protective gear uniformly includes fire-retardant coveralls or fire-retardant jacket and pants, steel-toe boots, hard hat, earplugs, safety goggles, and gloves. The donning process typically takes between five and twenty minutes. Once they have donned their protective gear, Safety Attendants must wait for a shuttle that transports them to the facility's security gate. The process of waiting for a shuttle and then and being transported to the facility takes between fifteen and thirty minutes. When the parking lot is on site, Safety Attendants must park and observe the same donning process; however, instead of taking a shuttle to the security gate, Safety Attendants must traverse a large parking lot on foot, after donning their protective gear, to the security gate.  For on-site parking facilities, the pre-security gate process takes between fifteen and thirty minutes.

51.     Once they have arrived at the facility, donned their protective gear, and traveled to the security gate, Safety Attendants go through a security check.  This requires Safety Attendants to wait in line while security inspects bags and ensures Safety Attendants are wearing all required protective equipment.  Indeed, according to Occupational Safety and Health Administration ("OSHA") requirements, Safety Attendants are not permitted to enter a facility unless they are wearing their protective gear.  *See* 29 CFR 1910.132. This process takes between five and fifteen minutes. After Safety Attendants pass through security, they swipe a badge that confirms their right to access to the facility and electronically documents the time in which they passed through security. Safety Attendants report that to comply with Defendants' scheduling and pre-shift activity requirements, they must have passed through the security gate and badged in at least thirty minutes before their scheduled start times.

52.     Once Safety Attendants go through the security check, they either walk or take a shuttle to another location at the facility which typically has a lunch tent or trailer, as well as a supervisor's trailer. This process takes between five and ten minutes.  Once at this location, Safety Attendants drop off their lunches, obtain and begin to fill out paperwork relating to their workday, gather equipment, and receive their job assignments for the day.  Often, the equipment Safety Attendants need for the day is not at that particular location, and they will have to walk to a different part of the facility to obtain the necessary equipment.  This equipment ranges from simple (e.g.,

hammers and brooms) to sophisticated (e.g., respirators, H2S monitors, gas monitors) and everything in between (e.g., fire extinguishers, radios, and gas masks). While at the lunch/supervisor trailers, Safety Attendants also attend mandatory daily safety meetings that last approximately five to ten minutes.  All totaled, Safety Attendants spend approximately thirty minutes engaged in these activities once they arrive at the lunch/supervisor trailers.

53.    At some point during the day (but not necessarily when Safety Attendants first report to their supervisors for the day), their supervisors document **a** start time on Technicians' time sheets – either by writing down that start time themselves, or by directing Safety Attendants to write down a specific start time, regardless of what time Safety Attendants *in fact* began working, and indeed, regardless of what time it actually is when the start time is created. Instead, Safety attendants are instructed to write down their scheduled start time, which does not account of any of the above-described pre-shift activity, but denotes the time at which Safety Attendants were scheduled to start working and expected to be at their post performing their assigned safety duties.  Indeed, CertifiedSafety admits that, as a matter of the refineries' policies, including Tesoro's, it is Defendants' expectation that Safety Attendants will only be clocked in for scheduled work time. Notably, the time sheets for Plaintiff and other Safety Attendants typically show Safety Attendants all beginning their day at the exact same time, and almost always on a round number, e.g., 6:30 a.m. or 7:00 a.m.

54.    At this point, Safety Attendants leave the lunch/supervisor trailer location and walk to their job post for the day.  When at a post, Safety Attendants perform essential safety functions requiring constant attention.  For example, when on fire watch and monitoring a welding team, Safety Attendants ensure no smoldering fires result from cutting or welding metal. Safety Attendants on hole watch ensure the safety of the person working in a confined space, while monitoring and recording air pressure to ensure oxygen levels are safe. The role of the Safety Attendant, and the constant attention demanded by the position, is an essential part of industrial maintenance safety programs.

55.    As a result of these demanding responsibilities, Safety Attendants rarely, if ever, are

1   permitted to take meal and rest breaks.  This is for several reasons.  First, Safety Attendants are

2   *always* required to carry their radios, and are *always* on call.  It is Defendants' expectation that

3   Safety Attendants always answer calls from their supervisors at any time.  Thus, no meal or rest

4   break is ever duty-free.

5       56.     Second, and with respect to meal breaks, food may not be eaten except in designated

6   locations – typically the lunch tent.  However, walking from a job post to the lunch tenth takes *at*

7   *least* ten to fifteen minutes.  This travel time is included within their thirty-minute meal breaks.

8   Because this travel time is included in the thirty-minute meal period, any lunch Safety Attendants

9   take consists of nothing more than a couple minutes to quickly eat some food, sandwiched in

10  between walking to and from the lunch tent for the vast majority of their thirty minute break.

11      57.     Third, OSHA requirements, as well as Defendants' requirements, insist that much of

12  the work performed at these facilities be monitored by Safety Attendants.  Thus, Safety Attendants

13  cannot abandon the crews under their supervision unless another Safety Attendant relieves them

14  (which rarely occurs), regardless of whether it is time to take a meal or rest break.  This often results

15  in meal and rest breaks never being taken, and to the extent such breaks are even attempted, they

16  are not timely. Fourth, and relatedly, Safety Attendants are constantly called on their radios

17  whenever they attempt to take a break, because the crew under their supervision needs to resume

18  working.

19      58.     Despite the fact that Safety Attendants rarely (if ever) take meal or rest breaks,

20  Defendants automatically deduct thirty minutes from Safety Attendants' pay as an uncompensated

21  meal period.  Defendants have no policies, procedures, or practices to ensure meal and rest breaks

22  are being taken.  Indeed, with the exception of California, CertifiedSafety admitted that Defendants

23  did nothing to track or even mark on timesheets whether meal periods were taken until the Fall of

24  2017 – a change that was admittedly triggered by the *Harold Jones, et al. v. CertifiedSafety*, Case

25  No. 3:17-cv-02229-EMC, lawsuit.  Instead, at the end of work shifts, Defendants' supervisors,

26  foreman, and managers instruct Safety Attendants to write that they took a meal break at a specific

27  time – typically at the four and a half hour mark in their shift.  Notably, CertifiedSafety's records

28

1    show that Safety Attendants apparently took meal breaks at the exact same time – often right at the

2    four and a half hour mark in their shift – and that time just so happens to be a round number, e.g.,

3    11:00 p.m. or 11:30 p.m.

4        59.    When shifts are scheduled to end, Safety Attendants may not leave their post until

5    another Safety Attendant relieves them.  This typically does not occur until after their scheduled

6    end times, and Safety Attendants frequently work fifteen minutes to an hour past their scheduled

7    end times waiting for relief.  Nevertheless, Safety Attendants are expected to clock out when their

8    shift is scheduled to end, regardless of when they stopped working.

9        60.    At the end of a shift, and once they are relieved by another Safety Attendant and

10   debrief with that individual, Safety Attendants walk back to the lunch/supervisor trailer area.  This

11   walk takes anywhere from ten to thirty minutes. Once at the lunch/supervisor trailers, they return

12   their equipment, complete and submit their paperwork for the day, and sign out with their supervisor

13   or foreman.  Safety Attendants do not write down the actual end time, but instead are instructed by

14   Defendants' supervisors and foremen to write down a specific time, or, said supervisors and

15   foremen write down this time themselves – a time that usually is the same as their scheduled end

16   times, even though the actual end time is much later.  Notably, Defendants' managers, foremen and

17   supervisors even use white out or erasable pens to alter time records when Safety Attendants do not

18   report times as instructed.  This applies to start and end times, as well as uncompensated meal

19   periods.

20       61.    Once Safety Attendants sign out for the day, they observe the same process as their

21   pre-shift activity.  This includes walking or shuttling from the lunch/supervisor trailers to the

22   security gate, going through a security check, walking or shuttling to their car, and doffing their

23   equipment.

24       62.    All totaled, Safety Attendants work between one hour and fifteen minutes to two and

25   a half hours off-the-clock every day – ***not including thirty minutes daily for uncompensated meal***

26   ***periods that were never provided.***  Safety Attendants must be parked and begin donning their

27   protective gear between one hour and one hour and fifteen minutes before their scheduled start time

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

1   to comply with Defendants' scheduling and pre-shift activity requirements.  Likewise, Safety

2   Attendants report that they typically do not finish doffing their protective gear until between forty-

3   five minutes and one hour and fifteen minutes after their scheduled end time.

4
     **Safety Attendants Incur Significant Expenses and Travel Long Distances to Work for
5              Defendants, Without Compensation or Adequate Reimbursement**

6        63.    Defendants' job sites are in remote locations requiring significant travel. For each

7   job, Safety Attendants are assigned to a project at a facility for one to three months.  After each job,

8   Safety Attendants are laid off. These jobs may be in the same town as the Safety Attendant, or in a

9   different town.  When jobs are in-town – generally, within a range of 65-75 miles – Defendants do

10  not provide any reimbursement for travel or daily per diems as a matter of policy, even though

11  commuting to these remote locations often takes an hour or more each way.

12       64.    For out-of-town projects, Defendants provide a one-time travel reimbursement and

13  daily per diem. However, Defendants do not inquire about the travel expenses in fact incurred, but

14  instead tell Safety Attendants how much it will reimburse *before* the project even begins. This one-

15  time travel reimbursement is set by Defendants.  Defendants set the one-time travel reimbursement

16  by simply using the website "MapQuest" to determine the number of miles between the Safety's

17  Attendant's residence and the jobsite, and providing the standard IRS mileage rate – nothing more.

18  However, some Defendants artificially cap the amount of mileage they will reimburse, and refuse

19  to provide the correct IRS rate.  No Defendant does anything to make up the difference as a matter

20  of policy.  Moreover, when a Safety Attendant does not complete the full project – either by being

21  fired or because the Safety Attendant voluntarily needed to leave – Defendants withhold travel

22  reimbursement *in its entirety*.  Regardless, it is the overwhelming experience of Safety Attendants

23  that the travel reimbursement provided is not sufficient to cover their travel expenses.

24       65.    Additionally, Safety Attendants are not compensated at an hourly rate or otherwise

25  for the actual time it takes to travel these long distances.  In fact, documents provided by

26  CertifiedSafety reveal Defendants' efforts to have Safety Attendants unlawfully waive their right

27  to claim travel time compensation when dispatching Safety Attendants, confirming that their failure

28

1  to compensate this time is knowing and willful.

2      66.    Likewise, the daily per diem does not come close to reimbursing Safety Attendants

3  for daily living expenses.  As a preliminary matter, Defendants set the daily per diem – typically

4  between $65 - $75 a day. On information and belief, Defendants do not conduct any investigations

5  or audits to determine whether this amount is sufficient to cover necessarily-incurred expenses. In

6  any event, it is plain that $70 a day is insufficient to cover all necessary living and lodging expenses.

7  Hotel costs *alone* far exceed this amount.  Indeed, while even the ordinary hotel costs would not be

8  covered by this per diem, hotels within driving distance of job sites often raise prices during

9  projects, knowing demand is high with an influx of remote workers.  Nightly hotel costs are often

10  nearly double Safety Attendants' daily per diem.  Thus, the per diem not only fails to cover hotel

11  costs, but it does not begin to cover other necessary daily living expenses, such as food, toiletries,

12  laundry costs, and the like.

13      67.    Additionally, Safety Attendants incur numerous expenses to perform their daily

14  duties that are not reimbursed.  For example, Safety Attendants must purchase fire-retardant

15  protective gear, backpacks, radio holsters, gloves, earplugs, clipboards, pens, steel-toe boots, and a

16  watch.

17      68.    In sum, Safety Attendants:

18          a.    Are frequently denied compensation for all hours worked, including minimum

19              wage and overtime for work in excess of eight hours per day and forty hours per

20              week, as well as double time for work over twelve hours in one day and over eight

21              hours on the seventh consecutive day of work;

22          b.    Are not provided with premium pay for missed meal and rest breaks.    When

23              Plaintiff and putative Class members work more than ten hours per day, a second

24              meal period is regularly not made available to them.  Putative Class members,

25              including Plaintiff, are not provided with premium pay for these missed meal

26              breaks; and

27

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

c.  Are denied reimbursement for work-related travel costs to putative Class and Collective members, including Plaintiff.  Defendants also do not reimburse Plaintiff, Class, and Collective members for necessarily incurred business expenses.

69.  Defendants are aware that Safety Attendants did not receive timely and compliant meal and rest periods to which they were entitled, and that they were denied compensation for all time worked.

70.  Defendants also do not provide putative Class members, including Plaintiff, accurate itemized wage statements as required by California law.  The wage statements that they are provided are not accurate because they do not reflect the actual hours worked by Plaintiff and putative Class members.  Further, the wage statements are inaccurate because they do not include minimum wage for all hours worked, premium pay for missed breaks, overtime, and double time for all hours worked.

71.  Defendants often do not provide putative Class members with full payment of all wages owed at the end of employment.  As these workers are owed for off-the-clock work, unpaid overtime, and premium pay when their employment ends, and these amounts remained unpaid under Defendants' policies and practices, Defendants fail to pay all wages due upon termination. As a consequence, Defendants are subject to waiting time penalties.[3]

72.  Defendants require Plaintiff and Class members to work at least seven consecutive days, without a day of rest.

73.  Plaintiff worked at several refinery sites in California and throughout the United States, including but not limited to in Washington and Minnesota, and his experience with regards

---

[3] Defendants often promise bonuses for work on holidays as well as overtime and double time for these projects.  However, these promises often go unfulfilled, and the employees do not receive all pay owed to them.  Moreover, Defendants regularly do not consider these bonuses when calculating the hourly rate, overtime rate, and double time rate for Plaintiffs and putative Class and Collective members.  The system Defendants have in place to pay Plaintiffs and other Safety Attendants bonuses does not address this wage deficiency and only further exacerbates the inadequate wages they earn and are owed under the law because such bonuses are not included in the calculation of their regular rate and fail to account for overtime and premium pay owing to such employees.

1 | to hours worked, off-the-clock work, meal and rest breaks, and unreimbursed business expenses are

2 | similar in each instance. Plaintiff is informed, believe, and thereon allege that Defendants' policies

3 | and practices have at all relevant times been similar for Safety Attendants, regardless of the location

4 | within the United States, including in California, Washington, and Minnesota. Defendants'

5 | unlawful conduct has been widespread, repeated, and consistent throughout its work locations in

6 | the United States, including in California, Washington, and Minnesota. Defendants knew or should

7 | have known that their policies and practices have been unlawful and unfair.

8 | 74.    Defendants' conduct was willful, carried out in bad faith, and caused significant

9 | damages to non-exempt hourly employees in an amount to be determined at trial.

10 | **COLLECTIVE ALLEGATIONS UNDER THE FLSA**

11 | 75.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

12 | herein.

13 | 76.    Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b)

14 | as to claims for failing to pay Plaintiff and Collective members for all hours worked, including

15 | minimum wage, wages at the agreed rate, and overtime compensation for all hours worked over 40

16 | hours per week, liquidated damages, and attorneys' fees and costs under the FLSA. The FLSA

17 | Collective that Plaintiff seeks to represent is defined as follows:

18 |
19 |
> All current and former hourly, non-exempt Safety Attendants and Safety Foremen who worked for CertifiedSafety at an Andeavor f/k/a Tesoro Corporation and/or Tesoro Refining & Marketing Company LLC facility in the United States during the time period three years prior to the filing of this Complaint until the resolution of this action.

20 |

21 | 77.    Plaintiff's claims for violations of the FLSA may be brought and maintained as an

22 | "opt-in" collective action pursuant to Section 216(b) of the FLSA because Plaintiff's FLSA claims

23 | are similar to the claims of the Collective members.

24 | 78.    The Collective members are similarly situated, as they have substantially similar job

25 | duties and requirements and were subject to a common policy, practice, or plan that required them

26 | to perform work without compensation and required them to perform work at an unlawfully reduced

27 | payment rate, in violation of the FLSA.

28 |

79. Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

80. Plaintiff will fairly and adequately represent and protect the interests of Collective members. Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

81. The similarly situated Collective members are known to Defendants, are readily identifiable, and may be located through Defendants' records. These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ALLEGATIONS

82. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

83. Plaintiff brings this case as a class action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

84. The putative California Class that Plaintiff seeks to represent regarding pre-assignment training in California is defined as follows:

> All current and former Safety Attendants and Safety Foremen who completed training in California prior to any assignment by CertifiedSafety to work for any Andeavor f/k/a Tesoro Corporation and/or Tesoro Refining & Marketing Company LLC refinery during the time period April 21, 2013 until the resolution of this action (the "California Training Class").

85. The putative California Class that Plaintiff seeks to represent regarding claims against CertifiedSafety and Tesoro for work at oil refineries in California is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety at any Andeavor f/k/a Tesoro Corporation and/or Tesoro Refining & Marketing Company LLC refinery in California during the time period April 21, 2013 until the resolution of this action (the "California Tesoro Class").

86. The putative Washington Class that Plaintiff seeks to represent regarding claims

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

against CertifiedSafety and Tesoro for work at oil refineries in Washington is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety at any Andeavor f/k/a Tesoro Corporation and/or Tesoro Refining & Marketing Company LLC refinery in Washington during the time period April 21, 2014 until the resolution of this action (the "Washington Class").

87.     The putative Minnesota Class that Plaintiff seeks to represent regarding claims against Tesoro for work at oil refineries in Minnesota is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety at any Andeavor f/k/a Tesoro Corporation and/or Tesoro Refining & Marketing Company LLC refinery in Minnesota during the time period three years prior to the filing of this complaint until the resolution of this action (the "Minnesota Class").

88.     The putative Minnesota Class that Plaintiffs seeks to represent regarding claims against CertifiedSafety for work at oil refineries in Minnesota is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety at any oil refinery in Minnesota during the time period three years prior to the filing of this complaint until the resolution of this action (the "Minnesota CertifiedSafety Class").

89.     This action has been brought and may properly be maintained as a class action under Rule 23:

a.     **Numerosity**: The potential members of the putative Classes as defined are so numerous that joinder of all the members of the putative Classes is impracticable.

b.     **Commonality**: There are questions of law and fact common to Plaintiff and the putative Classes that predominate over any questions affecting only individual members of the putative Classes. These common questions of law and fact include, but are not limited to:

i.     Whether Defendants fail to compensate members of the putative Classes for all hours worked, including at minimum wage and as overtime compensation, in violation of the California Labor Code and Wage Orders, as well as Washington's Minimum Wage Act, Revised Code of Washington 49.46, *et seq.* ("WMWA"); the Minnesota Fair Labor

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

Standards Act, Minn. Stat. § 177.21, *et seq.* ("MFLSA"); and the Minnesota Payment of Wages Act ("MPWA"), Minn. Stat. §§ 181.13 and 181.14;

ii.  Whether Defendants fail to compensate members of the putative California Classes for all hours worked, including at minimum wage and as overtime compensation, in violation of Business and Professions Code §§ 17200 *et seq.*;

iii. Whether Defendants have a policy and/or practice of requiring members of the putative Classes to be in the control of and/or spend time primarily for the benefit of Defendants, and perform off-the-clock without compensation;

iv.  Whether Defendants fail to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to members of the putative Classes in violation of the California Labor Code and Wage Orders, as well as the WMWA and MFLSA;

v.   Whether Defendants fail to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative California Class members in violation of Business and Professions Code §§ 17200 *et seq.*;

vi.  Whether Defendants fail to authorize and permit, make available, and/or provide members of the putative Classes with timely meal and rest periods to which they were entitled in violation of the California Labor Code and Wage Orders, as well as the WMWA;

vii. Whether Defendants fail to authorize and permit, make available, and/or provide putative California Class members with timely meal and rest periods to which they were entitled in violation of Business and Professions Code §§ 17200 *et seq.*;

viii.  Whether Defendants fail to reimburse members of the putative Classes for reasonable and necessary business expenses in violation of the California Labor Code and Wage Orders, as well as the WMWA;

ix.  Whether Defendants fail to reimburse putative Class members for reasonable and necessary business expenses in violation of Business and Professions Code §§ 17200 *et seq.*;

x.  Whether Defendants fail to provide members of the putative Classes with timely, accurate itemized wage statements in violation of the California Labor Code and Wage Orders, as well as the WMWA;

xi.  Whether Defendants fail to provide putative Class members with timely, accurate itemized wage statements in violation of Business and Professions Code §§ 17200 *et seq.*;

xii.  Whether Defendants fail to timely pay putative Class members for all wages owed upon termination of employment in violation of the California Labor Code, as well as the WMWA and MPWA;

xiii.  Whether Defendants fail to timely pay putative California Class members for all wages owed upon termination of employment in violation of Business and Professions Code §§ 17200 *et seq.*;

xiv.  Whether Defendants are liable for penalties to putative California Class members under the PAGA; and

xv.  The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Classes as alleged herein.

c.  **Typicality**: Plaintiff's claims are typical of the claims of the Classes. Defendants' common course of conduct in violation of law as alleged herein has caused Plaintiff and members of the putative Classes to sustain the same or similar injuries and damages. Plaintiff's claims are therefore representative of and co-extensive with the claims of the Classes.

d.  **Adequacy of Representation**: Plaintiff is a member of the Classes, do not have any conflicts of interest with other putative Class members, and will prosecute the case vigorously on behalf of the Classes. Counsel representing Plaintiff is competent and experienced in litigating large employment class actions, including wage and hour classes. Plaintiff will fairly and adequately represent and protect the interests of members of the putative Classes.

e.  **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the putative Classes is not practicable, and questions of law and fact common to the Classes predominates over any questions affecting only individual members of the Classes. Each member of the putative Classes have been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. In the alternative, the Classes may be certified because the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, and, in turn, would establish incompatible standards of conduct for Defendants.

### FIRST CAUSE OF ACTION
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 201, *et seq.***
*(By Plaintiff against Tesoro Defendants)*

90.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

91.  The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week. 29 U.S.C. § 207(a)(1).

92. At all times material herein, Plaintiff and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

93. Tesoro is a covered employer required to comply with the FLSA's mandates.

94. Tesoro has violated the FLSA with respect to Plaintiff and the Collective, by, *inter alia,* failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage. Tesoro has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the Collective. 29 U.S.C. § 211(c).

95. Plaintiff and the Collective are victims of uniform and company-wide compensation policies. These uniform policies, in violation of the FLSA, have been applied to current and former non-exempt, hourly Safety Attendants and Safety Foremen of Tesoro, working throughout the United States.

96. Plaintiff and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Tesoro has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

97. Tesoro has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

98. As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Tesoro from Plaintiff and the Collective. Accordingly, Tesoro is liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

99. Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

**SECOND CAUSE OF ACTION**

**Failure to Pay for All Hours Worked Pursuant to Labor Code § 204**
**For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*

100.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

101.    This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety and Tesoro.

102.    Defendants willfully engaged in and continue to engage in a policy and practice of not compensating Plaintiff and putative Class members for all hours worked or spent under its control.

103.    Defendants require Plaintiff and the putative California Training Class members to attend pre-assignment training sessions in California. These trainings are completely locally in California prior to the dispatch of Plaintiff and the putative California Training Class members to refinery locations throughout the United States for assignments. Defendants require Plaintiff and the putative California Training Class members to complete these trainings in order to accept the applicable job assignments, and the training are required for each job assignment.

104.    These pre-assignment training sessions can last up to eight hours, but Plaintiff and the putative California Training Class members are not paid for any of their time spent in them. Additionally, Plaintiff and the putative California Training Class members are not compensated for their expenses incurred traveling to and from the pre-assignment training sessions. As a result, Defendants fail to pay Plaintiff and the putative California Training Class members for all hours worked and fail to track their actual hours worked.

105.    Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

106.    Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

107.    Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

108.    IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

109.    Defendants require Plaintiff and the putative California Training Class members to work off-the-clock without compensation.  In other words, Plaintiff and the putative California Training Class members are forced to perform work for the benefit of Defendants without compensation.

110.    In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and the putative California Training Class members with compensation for all time worked.  Defendants regularly fail to track the time they actually worked or to compensate them for hours worked.  Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff's and the putative California Training Class members' rights.  Plaintiff and the putative California Training Class are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

111.    As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

112.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**THIRD CAUSE OF ACTION**
**Failure to Pay Minimum Wages Pursuant to California Labor**
**Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1**
**For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*

113.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

herein.

114.    This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety and Tesoro.

115.    During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and require that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017, and at a rate of eleven dollars ($11.00) per hour commencing January 1, 2018.

116.    "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

117.    California Labor Code §1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

118.    Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

119.    Defendants have maintained policies and procedures which have created a working environment where hourly employees are routinely compensated at a rate that is less than the statutory minimum wage.  Plaintiff and the putative California Training Class members are required to attend pre-assignment training but are not provided as compensation for any of the time that they spend in this training.

120.    As a direct and proximate result of the unlawful acts and/or omissions of Defendants,

1    Plaintiff and putative California Training Class members have been deprived of minimum wages

2    in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated

3    damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194,

4    1194.2 and 1197.1.

5        121.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

6                            **FOURTH CAUSE OF ACTION**

7    **Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802
     For Training in California**
     *(By Plaintiff against Defendants on behalf of the California Training Class)*

8

9        122.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

10   herein.

11       123.    This claim is brought by Plaintiff on behalf of the California Training Class against

12   CertifiedSafety and Tesoro.

13       124.    Defendants do not reimburse Plaintiff and putative Class members for necessary

14   business expenditures.

15       125.    Labor Code § 2802 provides, in relevant part:

16           An employer shall indemnify his or her employee for all necessary
             expenditures or losses incurred by the employee in direct consequence
17           of the discharge of his or her duties, or of his or her obedience to the
             directions of the employer, even though unlawful, unless the
18           employee, at the time of obeying the directions, believed them to be
             unlawful. … For the purposes of this section, the term "necessary
19           expenditures or losses" shall include all reasonable costs, including,
             but not limited to, attorney's fees incurred by the employee enforcing
20           the rights granted by this section.

21       126.    Defendants regularly require Plaintiff and putative California Training Class

22   members to pay out-of-pocket expenses for transportation and food when traveling to pre-

23   assignment training sessions in California.  Defendants do not reimburse Plaintiff for travel

24   expenses.

25       127.    Defendants are liable to Plaintiff and the putative California Training Class members

26   for the unreimbursed expenses and civil penalties, with interest thereon.  Furthermore, Plaintiff is

27   entitled to an award of attorneys' fees and costs as set forth below.

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

128.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226**
**For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*

129.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

130.   This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety and Tesoro.

131.   Defendants do not provide Plaintiff and putative California Training Class members with accurate itemized wage statements as required by California law.

132.   Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

133.   The IWC Wage Orders also establishes this requirement. (See IWC Wage Order 16-2001(6).)

134.   Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

135.    Defendants do not provide timely, accurate itemized wage statements to Plaintiff and putative California Training Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders.  As a result of the unpaid time for pre-assignment training, the wage statements Defendants provide their employees, including Plaintiff and putative California Training Class members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.

136.    Defendants are liable to Plaintiff and the putative California Training Class alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

137.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### SIXTH CAUSE OF ACTION
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
**For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*

138.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

139.    This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety and Tesoro.

140.    Defendants do not provide Plaintiff and putative California Training Class members with their wages when due under California law after their employment with Defendants ends.

141.    Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

142. Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

143. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

144. Plaintiff and putative California Training Class members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages. These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

145. Defendants willfully refuse to pay putative Class members all the wages that are due and owing to them, in the form of uncompensated off-the-clock time, minimum wage, and reimbursement for necessary business expenditures, upon the end of their employment as a result of Defendants' willful failure to provide Plaintiff and the putative California Training Class members with payment for all hours worked and reimbursement for travel for the required pre-assignment training in California. As a result of Defendants' actions, Plaintiff and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

146. Defendants' willful failure to pay Plaintiff and putative California Training Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202. As a result, Defendants are liable to Plaintiff and putative California Training Class members for all penalties owing pursuant to Labor Code §§ 201-203.

147. In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due. Therefore, the Plaintiff and putative

1 | California Training Class members are entitled to penalties pursuant to Labor Code § 203, plus
2 | interest.

3 |     148.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION
### Failure to Pay for All Hours Worked Pursuant to Labor Code § 204
### For Work at Refineries in California
*(By Plaintiff against Defendants on behalf of the California Tesoro Class)*

7 |     149.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth
8 | herein.

9 |     150.    This claim is brought by Plaintiff on behalf of the California Tesoro Class against
10 | CertifiedSafety and Tesoro.

11 |     151.    Defendants willfully engaged in and continue to engage in a policy and practice of
12 | not compensating Plaintiff and putative Class members for all hours worked or spent in its control
13 | while working at refineries in California.

14 |     152.    Defendants regularly schedule Plaintiff and the putative Class members to work
15 | twelve-hour shifts.  However, Defendants intentionally and willfully require Plaintiff and the
16 | putative Class members to complete additional work off-the-clock, in excess of twelve hours per
17 | day.  For example, Defendants instruct Safety Attendants to clock in only after they have donned
18 | personal protection equipment and to clock out before taking off their personal protection
19 | equipment.  Defendants do not compensate Plaintiff and Class members for this time.  Moreover,
20 | Defendants deduct thirty minutes of work for a meal period.  However, Plaintiff and putative Class
21 | members routinely work through this meal period and are not compensated for that work.
22 | Additionally, Defendants require Plaintiff and the putative Class members to attend training
23 | sessions, not including pre-assignment training, which often involve lengthy travel to the training
24 | site, without compensation for the time spent in trainings or traveling to the trainings. As a result,
25 | Defendants fail to pay Plaintiff and the putative Class members for all hours worked and fail to
26 | track their actual hours worked.

27 |     153.    Labor Code § 1194(a) provides as follows:

1

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

154. Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

155. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

156. IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

157. Defendants require Plaintiff and the Class to work off-the-clock without compensation. In other words, Plaintiff and the Class are forced to perform work for the benefit of Defendants without compensation.

158. In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and the putative Class with compensation for all time worked. Defendants regularly fail to track the time they actually worked or to compensate them for hours worked. Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff's and the putative Class members' rights. Plaintiff and the putative Classes are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

159. As a proximate result of the aforementioned violations, Plaintiff and the putative Classes have been damaged in an amount according to proof at time of trial.

160. Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

**EIGHTH CAUSE OF ACTION**
**Failure to Pay Minimum Wages Pursuant to California Labor Code §§ 1182.11, 1182.12,**
**1194, 1197, and 1197.1 For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Tesoro Class)*

161.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

162.    This claim is brought by Plaintiff on behalf of the California Tesoro Class against CertifiedSafety and Tesoro.

163.    During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and require that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017.

164.    "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

165.    California Labor Code §1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

166.    Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

167.    Defendants have maintained policies and procedures which have created a working environment where hourly employees are routinely compensated at a rate that is less than the statutory minimum wage while working at refineries in California.  Plaintiff and members of the putative Classes frequently work time off-the-clock during rest and meal breaks and go

uncompensated for that time.  In addition, Safety Attendants are regularly uncompensated for time spent donning and doffing safety equipment.

168.     As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and putative Class members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

169.     Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

## NINTH CAUSE OF ACTION
### Failure to Pay Overtime Wages Pursuant to Labor Code § 510
### For Work at Refineries in California
*(By Plaintiff against Defendants on behalf of the California Tesoro Class)*

170.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

171.     This claim is brought by Plaintiff on behalf of the California Tesoro Class against CertifiedSafety and Tesoro.

172.     Defendants do not compensate Plaintiff and putative Class members with the appropriate overtime rate, including time and a half and double time, as required by California law, for their work at refineries in California.  For example, Defendants do not consider bonuses when determining what the overtime and double time rates should be for Plaintiff and putative Class members.

173.     Labor Code § 510 provides as follows:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.  Nothing in this section requires an employer to combine more than one rate of overtime compensation

in order to calculate the amount to be paid to an employee for any hour of overtime work.

174.    The IWC Wage Order 16-2001(3)(A)(1) states:

The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: . . . One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and … [d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

175.    Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

176.    Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."  All such wages are subject to California's overtime requirements, including those set forth above.

177.    Defendants regularly require Plaintiff and putative Class members to work in excess of eight hours per day and forty hours per week, but do not compensate them at an overtime rate for this work.  Furthermore, Defendants regularly do not compensate Plaintiff and the putative Class members at a double time rate for hours worked in excess of twelve hours each day or after eight hours on the seventh consecutive day of work.

178.    Plaintiff and putative Class members work overtime hours for Defendants without

1  being paid overtime premiums in violation of the Labor Code, applicable IWC Wage Orders, and

2  other applicable law.

3      179.    Defendants knowingly and willfully refuse to perform their obligation to compensate

4  Plaintiff and the putative Class members for all premium wages for overtime work.  As a proximate

5  result of the aforementioned violations, Defendants have damaged Plaintiff and the putative Class

6  members in amounts to be determined according to proof at time of trial.

7      180.    Defendants are liable to Plaintiff and the Classes alleged herein for the unpaid

8  overtime and civil penalties, with interest thereon.  Furthermore, Plaintiff is entitled to an award of

9  attorneys' fees and costs as set forth below.

10     181.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

11                         **TENTH CAUSE OF ACTION**
   **Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**
12                 **Pursuant to Labor Code §§ 226.7 and 512**
                      **For Work at Refineries in California**
13        *(By Plaintiff against Defendants on behalf of the California Tesoro Class)*

14     182.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

15  herein.

16     183.    This claim is brought by Plaintiff on behalf of the California Tesoro Class against

17  CertifiedSafety and Tesoro.

18     184.    Defendants routinely do not make meal periods available to Plaintiff and putative

19  Class members working at refineries in California.  Despite long work days regularly lasting in

20  excess of twelve hours, Plaintiff and putative Class members are often unable to take a meal break,

21  are often prevented from timely taking a meal break, and are frequently interrupted during their

22  meal breaks.  When Plaintiff and putative Class members work more than ten hours in a day,

23  Defendants often do not make a second meal period available to them.

24     185.    Plaintiff and putative Class members are not paid one hour of premium pay for the

25  missed breaks.  Rather, Defendants deduct thirty minutes of pay on a daily basis for meal periods,

26  even though Plaintiff and putative Class members are routinely denied compliant meal periods.

27     186.    Similar to meal periods, Defendants regularly fail to make rest periods available to

28

Plaintiff and putative Class members.  Plaintiff's and putative Class members' schedules regularly prevent them from taking rest periods throughout the day.  When available, if ever, they are often not compliant.  Instead, they are generally untimely or short.  Plaintiff and putative Class members do not receive premium pay for their missed breaks as required by California law.

187.    Labor Code §§ 226.7 and 512 and the applicable Wage Orders require Defendants to authorize and permit meal and rest periods to their employees.  Labor Code §§ 226.7 and 512 and the Wage Orders prohibit employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes.  Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours or major fraction thereof of work, and to pay employees their full wages during those rest periods.  Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

188.    Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted.  Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

189.    Despite these requirements, Defendants knowingly and willfully refuse to perform their obligations to authorize and permit and/or make available to Plaintiff and the Classes the ability to take the off-duty meal and rest periods to which they were entitled.  Defendants fail to pay Plaintiff and the Classes one hour of pay for each off-duty meal and/or rest periods that they are denied.  Defendants' conduct described herein violates Labor Code §§ 226.7 and 512.  Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and the putative Classes are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods,

1    plus interest, attorneys' fees, expenses and costs of suit.

2        190.    As a proximate result of the aforementioned violations, Plaintiff and the putative

3    Classes have been damaged in an amount according to proof at time of trial.

4        191.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

5

6

7

### ELEVENTH CAUSE OF ACTION
**Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802
For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Tesoro Class)*

8        192.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

9    herein.

10        193.    This claim is brought by Plaintiff on behalf of the California Tesoro Class against

11    CertifiedSafety and Tesoro.

12        194.    Defendants do not reimburse Plaintiff and putative Class members for necessary

13    business expenditures incurred while working at refineries in California.

14        195.    Labor Code § 2802 provides, in relevant part:

15            An employer shall indemnify his or her employee for all necessary
              expenditures or losses incurred by the employee in direct consequence
16            of the discharge of his or her duties, or of his or her obedience to the
              directions of the employer, even though unlawful, unless the
17            employee, at the time of obeying the directions, believed them to be
              unlawful. … For the purposes of this section, the term "necessary
18            expenditures or losses" shall include all reasonable costs, including,
              but not limited to, attorney's fees incurred by the employee enforcing
19            the rights granted by this section.

20        196.    Defendants regularly require Plaintiff and putative Class members to pay out-of-

21    pocket expenses for transportation, lodging, and food when traveling to assigned work sites.

22    Defendants often promise to reimburse Plaintiff for these per diems and travel expenses, but often

23    fail to do so.  Additionally, Defendants attempt to have Plaintiff and putative Class members

24    illegally waive their right to reimbursement for travel expenses.  Even when Defendants reimburse

25    Plaintiff and Class members for these expenses, the amount reimbursed are often insufficient to

26    cover the total cost of travel.

27        197.    Furthermore, Defendants regularly require Plaintiff and putative Class members to

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

1   pay out-of-pocket expenses for personal protective equipment, including but not limited to boots,

2   and for the cost of washing this equipment.  Defendants do not reimburse Plaintiff and the putative

3   Class members for these expenditures.

4        198.   Defendants are liable to Plaintiff and the putative Class members for the

5   unreimbursed expenses and civil penalties, with interest thereon.  Furthermore, Plaintiff is entitled

6   to an award of attorneys' fees and costs as set forth below.

7        199.   Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

8
9   **TWELFTH CAUSE OF ACTION**
    **Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226**
    **For Work at Refineries in California**
10   *(By Plaintiff against Defendants on behalf of the California Tesoro Class)*

11        200.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

12   herein.

13        201.   This claim is brought by Plaintiff on behalf of the California Tesoro Class against

14   CertifiedSafety and Tesoro.

15        202.   Defendants do not provide Plaintiff and putative Class members with accurate

16   itemized wage statements as required by California law for their work at refineries in California.

17        203.   Labor Code § 226(a) provides:

18       Every employer shall, semimonthly or at the time of each payment of
19   wages, furnish each of his or her employees, either as a detachable
     part of the check, draft, or voucher paying the employee's wages, or
20   separately when wages are paid by personal check or cash, an accurate
     itemized statement in writing showing (1) gross wages earned, (2)
21   total hours worked by the employee, except for any employee whose
     compensation is solely based on a salary and who is exempt from
22   payment of overtime under subdivision (a) of Section 515 or any
     applicable order of the Industrial Welfare Commission, (3) the
23   number of piece-rate units earned and any applicable piece rate if the
     employee is paid on a piece-rate basis, (4) all deductions, provided
24   that all deductions made on written orders of the employee may be
     aggregated and shown as one item, (5) net wages earned, (6) the
25   inclusive dates of the period for which the employee is paid, (7) the
     name of the employee and his or her social security number, (8) the
26   name and address of the legal entity that is the employer, and (9) all
     applicable hourly rates in effect during the pay period and the
27   corresponding number of hours worked at each hourly rate by the
     employee.  The deductions made from payments of wages shall be
28   recorded in ink or other indelible form, properly dated, showing the

1
2

> month, day, and year, and a copy of the statement or a record of the
> deductions shall be kept on file by the employer for at least four years
> at the place of employment or at a central location within the State of
> California.

3      204.   The IWC Wage Orders also establishes this requirement.  (See IWC Wage Order 16-

4   2001(6).)

5      205.   Labor Code § 226(e) provides:

6
7
8
9

> An employee suffering injury as a result of a knowing and intentional
> failure by an employer to comply with subdivision (a) is entitled to
> recover the greater of all actual damages or fifty dollars ($50) for the
> initial pay period in which a violation occurs and one hundred dollars
> ($100) per employee for each violation in a subsequent pay period,
> not exceeding an aggregate penalty of four thousand dollars ($4,000),
> and is entitled to an award of costs and reasonable attorney's fees.

10   Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

11      206.   Defendants do not provide timely, accurate itemized wage statements to Plaintiff and

12   putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders.  The

13   wage statements Defendants provide their employees, including Plaintiff and putative Class

14   members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual

15   net wages earned.

16      207.   Defendants are liable to Plaintiff and the putative Classes alleged herein for the

17   amounts described above in addition to the civil penalties set forth below, with interest thereon.

18   Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant

19   to Labor Code § 226(e).

20      208.   Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

21
22
23

### THIRTEENTH CAUSE OF ACTION
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
**For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Tesoro Class)*

24      209.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

25   herein.

26      210.   This claim is brought by Plaintiff on behalf of the California Tesoro Class against

27   CertifiedSafety and Tesoro.

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

211. Defendants do not provide Plaintiff and putative Class members with their wages for their work at refineries in California when due under California law after their employment with Defendants ends.

212. Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

213. Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

214. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

215. Plaintiff and putative Class members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages. These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

216. Defendants willfully refuse to pay putative Class members all the wages that are due and owing to them, in the form of uncompensated off-the-clock time, minimum wage, overtime, meal and rest period premium pay, and reimbursement for necessary business expenditures upon the end of their employment as a result of Defendants' willful failure to provide Plaintiff and the putative Class members with payment for all hours worked, overtime, and meal and rest breaks. As a result of Defendants' actions, Plaintiff and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

217. Defendants' willful failure to pay Plaintiff and putative Class members the wages

1  due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Defendants are

2  liable to Plaintiff and proposed Class members for all penalties owing pursuant to Labor Code §§

3  201-203.

4      218.  In addition, Labor Code § 203 provides that an employee's wages will continue as a

5  penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiff and putative

6  Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

7      219.  Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

**FOURTEENTH CAUSE OF ACTION**
**Failure to Pay Minimum Wage (WMWA 49.46.090, RCW 49.12.150)**
**For Work at Refineries in Washington**
*(By Plaintiff against Defendants on behalf of the Washington Class)*

11      220.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

12  herein.

13      221.  This claim is brought by Plaintiff on behalf of the Washington Class against

14  CertifiedSafety and Tesoro.

15      222.  As detailed above, Defendants fail to compensate Plaintiff and putative Class

16  members with at least the minimum wage for all hours worked.

17      223.  During the applicable statutory period, WMWA 49.46.020(1)(a) was in full force and

18  effect and required that Plaintiff and putative Class members receive the minimum wage for all

19  hours worked at the rate of nine dollars thirty-two cents ($9.32) per hour commencing January 1,

20  2014, at the rate of nine dollars forty-seven cents ($9.47) per hour commencing July 1, 2015, at the

21  rate of eleven dollars ($11.00) per hour commencing January 1, 2017, at the rate of eleven dollars

22  and fifty cents ($11.50) per hour commencing January 1, 2018, and at the rate of twelve dollars

23  ($12.00) per hour commencing January 1, 2019.

24      224.  Washington Administrative Code ("WAC") 296-126-002 defines hours worked as

25  "all hours during which the employee is authorized or required by the employer to be on duty on

26  the employer's premises or at a prescribed work place.

27      225.  WMWA 49.46.090(1) provides, in relevant part:

> Any employer who pays any employee less than the amounts to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount due to such employee under this chapter, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court.

226. RCW 49.12.150 also provides:

> If any employee shall receive less than the legal minimum wage, except as hereinbefore provided in RCW 49.12.110, said employee shall be entitled to recover in a civil action the full amount of the legal minimum wage as herein provided for, together with costs and attorney's fees to be fixed by the court, notwithstanding any agreement to work for such lesser wage. In such action, however, the employer shall be credited with any wages which have been paid upon account.

227. RCW 49.48.030 allows the court to grant reasonable attorney's fees "[i]n any action in which any person is successful in recovering judgment for wages or salary owed" to him or her.

228. Because of Defendants' policies and practices with regard to compensating Plaintiff and putative Class members, Defendants have failed to pay minimum wages as required by law. Plaintiff and putative Class members frequently perform work for which they are compensated below the statutory minimum.

229. Plaintiff and putative Class members have been deprived of minimum wages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus interest thereon, attorneys' fees, and costs of suit pursuant to RCW 49.46.090 and 49.48.030.

230. Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

### FIFTEENTH CAUSE OF ACTION
**Failure to Pay Overtime Wages (WMWA 49.46.130)**
**For Work at Refineries in Washington**
*(By Plaintiff against Defendants on behalf of the Washington Class)*

231. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

232. This claim is brought by Plaintiff on behalf of the Washington Class against CertifiedSafety and Tesoro.

233. As detailed above, Defendants fail to compensate Plaintiff and putative Class members with at least the minimum wage for all hours worked.

234.    Defendants do not compensate Plaintiff and putative Class members with the appropriate overtime rate for work performed in excess of forty hours per week.

235.    WMWA 49.46.130(1) provides that work performed in excess of forty hours in a given week must be compensated at a rate of no less than one and one-half times the regular rate of pay for an employee.

236.    Wages are defined in the WMWA 49.46.010(7) as "compensation due to an employee by reason of employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value, subject to such deductions, charges, or allowances as may be permitted by rules of the director."

237.    All such wages are subject to Washington's overtime requirements, including those set forth above.

238.    WMWA 49.46.090(1) provides, in relevant part:

> Any employer who pays any employee less than the amounts to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount due to such employee under this chapter, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court.

239.    RCW 49.48.030 allows the court to grant reasonable attorney's fees "[i]n any action in which any person is successful in recovering judgment for wages or salary owed" to him or her.

240.    Defendants regularly require Plaintiff and putative Class members to work in excess of forty hours per week, but do not compensate them at an overtime rate for all of this work. Furthermore, as detailed above, Defendants routinely require Plaintiff and putative Class members to work, off the clock, which increases the amount of overtime compensation to which they are due, but do not receive.

241.    Plaintiff and putative Class members have worked overtime hours for Defendants without being paid overtime premiums in violation of the WMWA, and other applicable laws of the state of Washington.

242.    Defendants have knowingly and willfully refused to perform their obligation to

1    compensate Plaintiff and the putative Class members for all premium wages for overtime work.

2         243.    As a proximate result of the aforementioned violations, Defendants have damaged

3    Plaintiff and the putative Class members in amounts to be determined according to proof at time of

4    trial.  Plaintiff is entitled to recover overtime wages owed, including interest thereon, and attorneys'

5    fees and costs pursuant to RCW 49.46.090 and 49.48.030.

6         244.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

7
                    **SIXTEENTH CAUSE OF ACTION**
8    **Failure to Authorize and Permit and/or Make Available Meal and Rest Breaks**
              **(RCW 49.12.020) For Work at Refineries in Washington**
9             *(By Plaintiff against Defendants on behalf of the Washington Class)*

10        245.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

11   herein.

12        246.    This claim is brought by Plaintiff on behalf of the Washington Class against

13   CertifiedSafety and Tesoro.

14        247.    As detailed above, Defendants fail to compensate Plaintiff and putative Class

15   members with at least the minimum wage for all hours worked.

16        248.    RCW 49.12.010 provides:

17             The welfare of the state of Washington demands that all employees be
               protected from conditions of labor which have a pernicious effect on
18             their health.  The state of Washington, therefore, exercising herein its
               police and sovereign power declares that inadequate wages and
19             unsanitary conditions of labor exert such pernicious effect.

20        249.    RCW 49.12.020 provides that "[i]t shall be unlawful to employ any person in any

21   industry or occupation within the state of Washington under conditions of labor detrimental to their

22   health."

23        250.    Pursuant to RCW 49.12.005(5) and WAC 296-126-002(9), conditions of labor

24   "means and includes the conditions of rest and meal periods" for employees.

25        251.    WAC 296-126-092 provides:

26             (1) Employees shall be allowed a meal period of at least thirty minutes
                   which commences no less than two hours nor more than five hours
27                 from the beginning of the shift. Meal periods shall be on the
                   employer's time when the employee is required by the employer
28

---

48
CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

> to remain on duty on the premises or at a prescribed work site in the interest of the employer.
> (2) No employee shall be required to work more than five consecutive hours without a meal period.
>
> (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.
> (5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

252.    In the present case, Plaintiff and putative Class members are routinely required to work through rest and meal periods. When Plaintiff and putative Class members do receive a meal or rest break, these breaks generally are on duty.

253.    By actions alleged above, Defendants have violated WAC 296-126-092.  This, in turn, constitutes a violation of RCW 49.12.010 and RCW 49.12.020.

254.    RCW 49.12.170 provides, in relevant part:

> any employer employing any person for whom a minimum wage or standards, conditions, and hours of labor have been specified, at less than said minimum wage, or under standards, or conditions of labor or at hours of labor prohibited by the rules and regulations of the director … shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be punished by a fine of not less than twenty-five dollars nor more than one thousand dollars.

255.    As a result of these unlawful acts, Plaintiff and the Classes have been deprived of compensation in amounts to be determined at trial, and Plaintiff and the Classes are entitled to the recovery of such damages, including interest thereon, civil penalties, and attorneys' fees and costs under RCW 49.48.030 and 49.12.170.

256.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

### SEVENTEENTH CAUSE OF ACTION
**Unpaid Wages On Termination (RCW 49.48)**
**For Work at Refineries in Washington**
*(By Plaintiff against Defendants on behalf of the Washington Class)*

257.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

1    herein.

2         258.    This claim is brought by Plaintiff on behalf of the Washington Class against

3    CertifiedSafety and Tesoro.

4         259.    As detailed above, Defendants fail to compensate Plaintiff and putative Class

5    members with at least the minimum wage for all hours worked.

6         260.    Under RCW 49.46.090, employers must pay employees all wages to which they are

7    entitled under the Washington Minimum Wage Act. If the employer fails to do so, RCW 49.46.090

8    requires that the employer pay the employees the full amount of the statutory minimum wage rate

9    less any amount actually paid to the employee.

10        261.    By the actions alleged above, Defendants have violated the provisions of RCW

11   49.46.090 and the WMWA by failing to pay any wage whatsoever to Plaintiff and putative Class

12   members when they work off the clock, miss all or part of their breaks, and are deprived of correct

13   overtime compensation.

14        262.    As a result of the unlawful acts of Defendants, Plaintiff and the putative Classes have

15   been deprived of regular and overtime compensation in an amount to be determined at trial.

16   Pursuant to RCW 49.46.090 and 49.48.030, Plaintiff and the Classes are entitled to recover

17   attorneys' fees and costs of suit.

18        263.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

19                        **EIGHTEENTH CAUSE OF ACTION**
20                 **Willful Refusal to Pay Wages (RCW 49.52.050)**
                     **For Work at Refineries in Washington**
21           *(By Plaintiff against Defendants on behalf of the Washington Class)*

22        264.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

23   herein.

24        265.    This claim is brought by Plaintiff on behalf of the Washington Class against

25   CertifiedSafety and Tesoro.

26        266.    As detailed above, Defendants fail to compensate Plaintiff and putative Class

27   members with at least the minimum wage for all hours worked.

28

267.    RCW 49.52.050(2) provides that any employer or agent of any employer who "[w]illfully and with intent to deprive the employee of any party of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" shall be guilty of a misdemeanor.

268.    RCW 49.52.070 provides that any employer who violates the foregoing statute shall be liable in a civil action for twice the amount of wages withheld, together with costs of suit and reasonable attorney fees.

269.    An employer's nonpayment of wages is willful and made with intent "when it is the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment." *Wingert v. Yellow Freight Sys., Inc.* 146 Wash.2d 841, 849 (2002), *quoting Chelan Cnty. Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wash.2d 282, 300 (1987).

270.    In the present case, Defendants intentionally fail to pay all wages owed to Plaintiff and putative Class members, including minimum wage and overtime wages, by requiring Plaintiff and putative Class members to work during meal and rest periods.   Defendants knew or should have known that their employment policies violate Washington law, and their failure to pay wages owed to Plaintiff and putative Class members was "willful" under RCW 49.52.050(2).

271.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

## NINETEENTH CAUSE OF ACTION
### Violation of Washington's Consumer Protection Act (RCW 19.86)
### For Work at Refineries in Washington
*(By Plaintiff against Defendants on behalf of the Washington Class)*

272.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

273.    This claim is brought by Plaintiff on behalf of the Washington Class against CertifiedSafety and Tesoro.

274.    As detailed above, Defendants fail to compensate Plaintiff and putative Class members with at least the minimum wage for all hours worked.

275.    Defendants have engaged in unfair or deceptive acts or practices when they: (i) fail to pay Plaintiff and Class members wages for off-the-clock work; (ii) prevent Plaintiff and Class members from taking rest and meal breaks; (iii) fail to pay Plaintiff and Class members for the periods during which their rest and meal breaks were interrupted; (iv) fail to pay Plaintiff and Class members for overtime worked; (v) violate RCW 49.46.30; (vi) violate WAC 296-126-023; and (vii) violate WAC 296-126-092 and 296-125-0287.

276.    Defendants' unfair or deceptive acts or practices repeatedly occur in Defendants' trade or business, and are capable of deceiving a substantial portion of the public.

277.    As a direct and proximate cause of Defendants' unfair or deceptive acts or practices, Plaintiff and the Class have suffered actual damages, in that Plaintiff and Class members are wrongfully denied the payment of wages, are forced to work off the clock, and are prevented from taking rest and meal breaks.

278.    As a result of Defendants' unfair and deceptive practices, Plaintiff and the Classes are entitled, pursuant to RCW 19.86.090, to recover treble damages, reasonable attorneys' fees, and costs.

279.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

**TWENTIETH CAUSE OF ACTION**
**Failure to Pay Minimum Wage (Minn. Stat. § 177.21, *et seq*.)**
**For Work at Refineries in Minnesota**
*(By Plaintiff against Defendants on behalf of the Minnesota Class and Minnesota CertifiedSafety Class)*

280.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

281.    This claim is brought by Plaintiff on behalf of the Minnesota Class and Minnesota CertifiedSafety Class against CertifiedSafety and Tesoro.

282.    As detailed above, Defendants failed to compensate Plaintiff and putative Class members with at least the minimum wage for all hours worked.

283.    During the applicable statutory period, the MFLSA, Minn. Stat. § 177.21 et seq., was in full force and effect and required that Plaintiff and putative Class members receive the Minnesota

1  minimum wage for all hours worked. Under Minn. Stat. § 177.24, Subdivision 1, every large

2  employer must pay each employee a minimum wage of $8.00 per hour beginning August 1, 2014,

3  $9.00 per hour beginning August 1, 2015, $9.50 per hour beginning August 1, 2016, $9.65 per hour

4  beginning January 1, 2018, and $9.85 per hour beginning January 1, 2019.

5       284.   Plaintiff and putative Class members were directed to work by Defendants and, in

6  fact, did work but were not compensated at least at the Minnesota minimum wage rate for all time

7  worked. Pursuant to Under Minn. Stat. § 177.24, Subdivision 1, Plaintiff and putative Class

8  members are entitled to be compensated at least at the applicable Minnesota-mandated minimum

9  wage rate for all time worked.

10       285.   Minn. R. 5200.0120, Subpart 1, provides as follows:

11  
12  
13  
14  
> The minimum wage must be paid for all hours worked. Hours worked include training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available. Rest periods of less than 20 minutes may not be deducted from total hours worked.

15       286.   Minn. R. 5200.0120, Subpart 2, provides that "[a]n employee who is required to

16  remain on the employer's premises or so close to the premises that the employee cannot use the

17  time effectively for the employee's own purposes is working while on call."

18       287.   Minn. R. 5200.0120, Subpart 3, provides as follows:

19  
20  
21  
22  
23  
24  
25  
> Bona fide meal periods are not hours worked. Bona fide meal periods do not include rest periods such as coffee breaks or time for snacks. The employee must be completely relieved from duty for the purpose of eating regular meals. Thirty minutes or more is ordinarily long enough for a bona fide meal period. A shorter period may be adequate under special conditions. The employee is not completely relieved from duty if required to perform any duties, whether active or inactive, while eating. It is not necessary that an employee be permitted to leave the premises, if the employee is otherwise completely freed from duties during the meal period. If the meal period is frequently interrupted by calls to duty, the employee is not relieved of all duties and the meal periods must be considered as hours worked.

26  
27  
28

288.   Pursuant to Minn. Stat. § 177.27, Subdivision 8, Plaintiff and the putative Class members are entitled to recover unpaid minimum wages under the MFLSA in a civil action. Minn. Stat. § 177.27, Subdivision 8 further states:

> An employer who pays an employee less than the wages … to which the employee is entitled … is liable to the employee for the full amount of the wages, gratuities, and overtime compensation, less any amount the employer is able to establish was actually paid to the employee and for an additional equal amount as liquidated damages. In addition, in an action under this subdivision the employee may seek damages and other appropriate relief provided by subdivision 7 and otherwise provided by law.

289.   Minn. Stat. § 177.27, Subdivision 10 provides that in any action brought pursuant to subdivision 8, the court shall order an employer who is found to have violated the MFLSA minimum wage requirements "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

290.   Pursuant to Minn. Stat. § 549.03, when an employer of labor neglects or refuses to pay the agreed price, or the reasonable value if there is no agreement, for 30 days after it is due and payment is demanded, and the payment is recovered by action, the plaintiff shall be allowed to collect and all of the disbursements allowed by law and double the costs.

291.   Because of Defendants' policies and practices with regard to compensating Plaintiff and putative Class members, Defendants have willfully failed to pay minimum wages as required by law. The off-the-clock work—including but not limited to travel time, donning and doffing time, and work during meal periods that have been deducted from the nominal hours worked—contributes to the actual hours worked by Plaintiff and putative Class members. Moreover, Defendants regularly require Plaintiff and putative Class members to pay out-of-pocket for work expenses including personal protective equipment and transportation, lodging, and food when traveling to assigned work sites, and fail to fully reimburse Plaintiff and putative Class members for these expenses, if at all. When the remuneration received by Plaintiff and putative Class members is reduced by unreimbursed out-of-pocket expenses, and then divided by the actual hours worked, Plaintiff and putative Class members are frequently compensated below the statutory minimum.

292.    Plaintiff and putative Class members have been deprived of minimum wages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory and liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to Minn. Stat. § 177.25, Minn. Stat. § 177.27, and the related Administrative Rules. Plaintiff is entitled to recovery of double costs pursuant to Minn. Stat. § 549.03.

293.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

## TWENTY-FIRST CAUSE OF ACTION
### Failure to Pay Overtime Wages (Minn. Stat. § 177.21, *et seq.*)
### For Work at Refineries in Minnesota
*(By Plaintiff against Defendants on behalf of the Minnesota Class and*
*Minnesota CertifiedSafety Class)*

294.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

295.    This claim is brought by Plaintiff on behalf of the Minnesota Class and Minnesota CertifiedSafety Class against CertifiedSafety and Tesoro.

296.    Defendants do not compensate Plaintiff and putative Class members with the appropriate overtime rate for work performed in excess of forty-eight (48) hours per week.

297.    The MFLSA, Minn. Stat. § 177.25, requires employers to pay their employees for hours worked in excess of forty eight (48) in an individual work week at a rate no less than one and one-half times their regular hourly rate of pay.

298.    Minn. R. 5200.0120, Subpart 1, provides as follows:

> Hours worked include training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available. Rest periods of less than 20 minutes may not be deducted from total hours worked.

299.    Minn. R. 5200.0120, Subpart 2, provides that "[a]n employee who is required to remain on the employer's premises or so close to the premises that the employee cannot use the time effectively for the employee's own purposes is working while on call."

300.    Minn. R. 5200.0120, Subpart 3, provides as follows:

Bona fide meal periods are not hours worked. Bona fide meal periods do not include rest periods such as coffee breaks or time for snacks. The employee must be completely relieved from duty for the purpose of eating regular meals. Thirty minutes or more is ordinarily long enough for a bona fide meal period. A shorter period may be adequate under special conditions. The employee is not completely relieved from duty if required to perform any duties, whether active or inactive, while eating. It is not necessary that an employee be permitted to leave the premises, if the employee is otherwise completely freed from duties during the meal period. If the meal period is frequently interrupted by calls to duty, the employee is not relieved of all duties and the meal periods must be considered as hours worked.

301.    Minn. R. 5200.0130 defines the regular rate of pay for overtime calculations as "the employee's remuneration in any workweek [divided] by the total hours worked." Minn. R. 5200.0140 excludes the following payments from the employee's remuneration for overtime calculations:

A.  reimbursement for expenses incurred on the employer's behalf;
B.  premium payments for overtime work or work on Saturdays, Sundays, holidays, or scheduled days off, if the premium rate is at least 1-1/2 times the normal rate;
C.  bonuses given at the employer's discretion, as to both time and amount of payment;
D.  cash or other valuables in the nature of gifts on special occasions;
E.  payments for occasional periods when no work is performed including but not limited to vacation, holiday, or illness;
F.  payments made pursuant to a bona fide profit-sharing plan or trust or bona fide thrift or savings plan, if amounts are determined without regard to production or efficiency; and
G.  contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees.

302.    All other wages are subject to Minnesota's overtime requirements, including those set forth above.

303.    Minn. R. 5200.0150 requires that overtime "be paid no later than the payday immediately following the regular payday for the pay period in which it was earned."

304.    Pursuant to Minn. Stat. § 177.27, Subdivision 8, Plaintiff and the putative Class members are entitled to recover unpaid overtime wages under the MFLSA in court. Minn. Stat. § 177.27, Subdivision 8 further states:

An employer who pays an employee less than the … overtime compensation to which the employee is entitled … is liable to the

employee for the full amount of the wages, gratuities, and overtime compensation, less any amount the employer is able to establish was actually paid to the employee and for an additional equal amount as liquidated damages. In addition, in an action under this subdivision the employee may seek damages and other appropriate relief provided by subdivision 7 and otherwise provided by law.

305.   Minn. Stat. § 177.27, Subdivision 10 provides that in any action brought pursuant to Subdivision 8, the court shall order an employer who is found to have violated the MFLSA overtime requirements "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

306.   Pursuant to Minn. Stat. § 549.03, when an employer of labor neglects or refuses to pay the agreed price, or the reasonable value if there is no agreement, for 30 days after it is due and payment is demanded, and the payment is recovered by action, the plaintiff shall be allowed to collect and all of the disbursements allowed by law and double the costs.

307.   Because of Defendants' policies and practices with regard to compensating Plaintiff and putative Class members, Defendants have willfully failed to pay overtime wages as required by law. The off-the-clock work—including but not limited to travel time, donning and doffing time, and work during meal periods that have been deducted from the nominal hours worked—contributes to the actual hours worked by Plaintiff and putative Class members. The actual hours worked exceed the threshold for overtime pay. Moreover, Defendants regularly require Plaintiff and putative Class members to pay out-of-pocket for work expenses including personal protective equipment and transportation, lodging, and food when traveling to assigned work sites, and fail to fully reimburse Plaintiff and putative Class members for these expenses, if at all. When the remuneration received by Plaintiff and putative Class members is reduced by unreimbursed out-of-pocket expenses, and then divided by the actual hours worked, Defendants fail to compensate by Plaintiff and putative Class members at the appropriate overtime rate for all of these hours.

308.   Plaintiff and putative Class members have been deprived of overtime wages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus statutory and liquidated damages, interest thereon, attorneys' fees, and costs of suit pursuant to Minn. Stat. §

1    177.25, Minn. Stat. § 177.27, and the related Administrative Rules. Plaintiff is entitled to recovery

2    of double costs pursuant to Minn. Stat. § 549.03.

3          309.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

1

**TWENTY-SECOND CAUSE OF ACTION**
**Failure to Pay for All Hours Worked (Minn. Stat. § 181.14)**
**For Work at Refineries in Minnesota**
*(By Plaintiff against Defendants on behalf of the Minnesota Class and*
*Minnesota CertifiedSafety Class)*

2

3

4      310.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

5    herein.

6      311.    This claim is brought by Plaintiff on behalf of the Minnesota Class and Minnesota

7    CertifiedSafety Class against CertifiedSafety and Tesoro.

8      312.    Defendants willfully engaged in and continues to engage in a policy and practice of

9    not compensating Plaintiff and putative Class members for all hours worked or spent in their

10   control.

11     313.    Defendants regularly schedule Plaintiff and the putative Class members to work

12   twelve-hour shifts.  However, Defendants intentionally and willfully require Plaintiff and the

13   putative Class members to complete additional work off-the-clock, in excess of twelve hours per

14   day.  For example, Defendants instruct Safety Attendants to clock in only after they have donned

15   personal protection equipment and to clock out before taking off their personal protection

16   equipment.  Defendants do not compensate Plaintiff and Class members for this time.  Moreover,

17   Defendants deduct thirty minutes of work for a meal period.  However, Plaintiff and putative Class

18   members routinely work through this meal period and are not compensated for that work.  As a

19   result, Defendants fail to pay Plaintiff and the putative Class members for all hours worked and fail

20   to track their actual hours worked.

21     314.    Minn. R. 5200.0120, Subpart 1, provides as follows:

22       Hours worked include training time, call time, cleaning time, waiting
23       time, or any other time when the employee must be either on the
         premises of the employer or involved in the performance of duties in
24       connection with his or her employment or must remain on the
         premises until work is prepared or available. Rest periods of less than
25       20 minutes may not be deducted from total hours worked.

26     315.    Minn. R. 5200.0120, Subpart 2, provides that "[a]n employee who is required to

27   remain on the employer's premises or so close to the premises that the employee cannot use the

28

1    time effectively for the employee's own purposes is working while on call."

2        316.    Minn. R. 5200.0120, Subpart 3, provides as follows:

3            Bona fide meal periods are not hours worked. Bona fide meal periods
            do not include rest periods such as coffee breaks or time for snacks.
4            The employee must be completely relieved from duty for the purpose
            of eating regular meals. Thirty minutes or more is ordinarily long
5            enough for a bona fide meal period. A shorter period may be adequate
            under special conditions. The employee is not completely relieved
6            from duty if required to perform any duties, whether active or inactive,
            while eating. It is not necessary that an employee be permitted to leave
7            the premises, if the employee is otherwise completely freed from
            duties during the meal period. If the meal period is frequently
8            interrupted by calls to duty, the employee is not relieved of all duties
            and the meal periods must be considered as hours worked.
9

10        317.    Defendants require Plaintiff and the Classes to work off-the-clock without

11    compensation.  In other words, Plaintiff and the Classes are forced to perform work for the benefit

12    of Defendants without compensation.

13        318.    Minn. Stat. § 181.101(a) provides as follows:

14            [E]very employer must pay all wages earned by an employee at least
            once every 31 days on a regular payday designated in advance by the
15            employer regardless of whether the employee requests payment at
            longer intervals. Unless paid earlier, the wages earned during the first
16            half of the first 31-day pay period become due on the first regular
            payday following the first day of work.
17

18        319.    The MPWA, Minn. Stat. § 181.14, Subdivision 1, provides as follows:

19            Wages are earned and unpaid if the employee was not paid for all time
            worked at the employee's regular rate of pay or at the rate required by
20            law, including any applicable statute, regulation, rule, ordinance,
            government resolution or policy, contract, or other legal authority,
21            whichever rate of pay is greater.

22        320.    Pursuant to Minn. Stat. § 181.171, Subdivisions 1 and 3, Plaintiff and the putative

23    Class members are entitled to recover unpaid wages, civil penalties, compensatory damages,

24    injunctive relief, and attorneys' fees and costs in a civil action for violations for Minn. Stat. §§

25    181.101 and 181.14.

26        321.    Pursuant to Minn. Stat. § 549.03, when an employer of labor neglects or refuses to

27    pay the agreed price, or the reasonable value if there is no agreement, for 30 days after it is due and

28

1   payment is demanded, and the payment is recovered by action, the plaintiff shall be allowed to

2   collect and all of the disbursements allowed by law and double the costs.

3       322.    In violation of Minnesota law, Defendants knowingly and willfully refuse to perform

4   their obligations to provide Plaintiff and the putative Classes with compensation for all time

5   worked.  Defendants regularly fail to track the time they actually worked or to compensate them

6   for hours worked.  Therefore, Defendants committed, and continue to commit, the acts alleged

7   herein knowingly and willfully, and in conscious disregard of the Plaintiff and the putative Class

8   members' rights.  Plaintiff and the putative Classes are thus entitled to recover nominal, actual,

9   statutory, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit,

10  pursuant Minn. Stat. § 181.171, Subdivisions 1 and 3. Plaintiff is entitled to recovery of double

11  costs pursuant to Minn. Stat. § 549.03.

12      323.    As a proximate result of the aforementioned violations, Plaintiff and the putative

13  Classes have been damaged in an amount according to proof at time of trial.

14      324.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

15                              **TWENTY-THIRD CAUSE OF ACTION**
                        **Unpaid Wages on Termination (Minn. Stat. § 181.14)**
16                              **For Work at Refineries in Minnesota**
                        *(By Plaintiff against Defendants on behalf of the Minnesota Class and*
17                              *Minnesota CertifiedSafety Class)*

18      325.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

19  herein.

20      326.    This claim is brought by Plaintiff on behalf of the Minnesota Class and Minnesota

21  CertifiedSafety Class against CertifiedSafety and Tesoro.

22      327.    The MPWA, Minn. Stat. §§ 181.13 and 181.14, requires prompt payment of all wages

23  to employees for all hours worked at the end of employment.

24      328.    Minn. Stat. § 181.13, Subdivision 1, provides as follows:

25              When any employer employing labor within this state discharges an
                employee, the wages or commissions actually earned and unpaid at
26              the time of the discharge are immediately due and payable upon
                demand of the employee. Wages are actually earned and unpaid if the
27              employee was not paid for all time worked at the employee's regular
                rate of pay or at the rate required by law, including any applicable
28

statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater.

329. Minn. Stat. § 181.13, Subdivision 1, further provides the following regarding discharged employees:

> If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default. In addition to recovering the wages and commissions actually earned and unpaid, the discharged employee may charge and collect a penalty equal to the amount of the employee's average daily earnings at the employee's regular rate of pay or the rate required by law, whichever rate is greater, for each day up to 15 days, that the employer is in default, until full payment or other settlement, satisfactory to the discharged employee, is made. … An employee's demand for payment under this section must be in writing but need not state the precise amount of unpaid wages or commissions. An employee may directly seek and recover payment from an employer under this section even if the employee is not a party to a contract that requires the employer to pay the employee at the rate of pay demanded by the employee, so long as the contract or any applicable statute, regulation, rule, ordinance, government resolution or policy, or other legal authority requires payment to the employee at the particular rate of pay. The employee shall be able to directly seek payment at the highest rate of pay provided in the contract or applicable law, and any other related remedies as provided in this section.

330. Minn. Stat. § 181.14, Subdivision 1, provides as follows:

> When any [] employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment, unless an employee is subject to a collective bargaining agreement with a different provision. Wages are earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater. If the first regularly scheduled payday is less than five calendar days following the employee's final day of employment, full payment may be delayed until the second regularly scheduled payday but shall not exceed a total of 20 calendar days following the employee's final day of employment.

331. Minn. Stat. § 181.14, Subdivision 2, provides the following regarding employees who quit or resign:

> Wages or commissions not paid within the required time period shall become immediately payable upon the demand of the employee. If the employee's earned wages or commissions are not paid within 24 hours after the demand, the employer shall be liable to the employee for a

1
2
3
4
5
6
7
8
9

penalty equal to the amount of the employee's average daily earnings at the employee's regular rate of pay or the rate required by law, whichever rate is greater, for every day, not exceeding 15 days in all, until such payment or other settlement satisfactory to the employee is made. The employer shall also be liable to the employee for the amount of wages and commissions that are earned and unpaid. An employee's demand for payment under this section must be in writing but need not state the precise amount of unpaid wages or commissions. An employee may directly seek and recover payment from an employer under this section even if the employee is not a party to a contract that requires the employer to pay the employee at the rate of pay demanded by the employee, so long as the contract or any applicable statute, regulation, rule, ordinance, government resolution or policy, or other legal authority requires payment to the employee at the particular rate of pay. The employee shall be able to directly seek payment at the highest rate of pay provided in the contract or applicable law, and any other remedies related thereto as provided in this section.

10   332.    Pursuant to Minn. Stat. § 181.171, Subdivisions 1 and 3, Plaintiff and the putative

11  Class members are entitled to recover unpaid wages, civil penalties, compensatory damages,

12  injunctive relief, and attorneys' fees and costs in a civil action for violations for Minn. Stat. §§

13  181.13 and 181.14.

14   333.    By the actions alleged above, Defendants violated the provisions of Minn. Stat. §§

15  181.13 and 181.14 by failing to pay any wage whatsoever to Plaintiff and putative Class members

16  when they worked off the clock, missed all or part of their breaks, and were deprived of correct

17  overtime compensation. Moreover, Defendants regularly required Plaintiff and putative Class

18  members to pay out-of-pocket for work expenses including personal protective equipment and

19  transportation, lodging, and food when traveling to assigned work sites, and failed to fully

20  reimburse Plaintiff and putative Class members for these expenses, if at all. These amounts remain

21  due upon the separation of employment. Therefore, Defendants committed, and continue to commit,

22  the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff and the

23  putative Class members' rights.  Plaintiff and the putative Classes are thus entitled to recover

24  nominal, actual, statutory, and compensatory damages, plus interest, attorneys' fees, expenses, and

25  costs of suit, pursuant Minn. Stat. § 181.171, Subdivisions 1 and 3.

26   334.    As a proximate result of the aforementioned violations, Plaintiff and the putative

27  Classes have been damaged in an amount according to proof at time of trial.

28

335.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

**TWENTY-FOURTH CAUSE OF ACTION**
**Failure to Keep Accurate Payroll Records (Minn. Stat. § 177.30)**
**For Work at Refineries in Minnesota**
*(By Plaintiff against Defendants on behalf of the Minnesota Class and*
*Minnesota CertifiedSafety Class)*

336.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

337.    This claim is brought by Plaintiff on behalf of the Minnesota Class and Minnesota CertifiedSafety Class against CertifiedSafety and Tesoro.

338.    Defendants do not maintain accurate payroll records for Plaintiff and putative Class members as required by Minnesota law.

339.    Minn. Stat. § 177.30(a) requires every employer subject to Minn. Stat. §§ 177.21-177.44 to make and keep records of (1) the name, address, and occupation of each employee; (2) the rate of pay, and the amount paid each pay period to each employee; (3) the hours worked each day and each workweek by the employee; and (4) other information as necessary and appropriate. The records must be kept for three years in or near the premises where an employee works.

340.    Pursuant to Minn. Stat. § 177.30(b), the Commissioner of the Minnesota Department of Labor and Industry (the "Commissioner") may fine an employer up to $1,000 for each failure to maintain payroll records as required. In determining the amount of a civil, the size of the employer's business and the gravity of the violation shall be considered.

341.    Pursuant to Minn. Stat. § 177.27, Subdivision 7, the Commissioner may order employers who violate Minn. Stat. § 177.30 and other Minnesota wage and hour laws to pay civil penalties, attorneys' fees, and other appropriate relief. Additionally, any employer who is found by the Commissioner to have repeatedly or willfully violated the provisions in Minn. Stat. §§ 177.21-177.44, including Minn. Stat. § 177.30, shall be subject to a civil penalty of up to $1,000 for each violation for each employee.

342.     Pursuant to Minn. Stat. § 177.27, Subdivision 8, employees may seek damages and other appropriate relief that may alternatively be sought by the Commissioner under Minn. Stat. § 177.27, Subdivision 7 and as otherwise provided by law.

343.     Minn. Stat. § 177.27, Subdivision 10 provides that in any action brought pursuant to Minn. Stat. § 177.27, Subdivision 8, the court shall order an employer who is found to be in violation "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

344.     Defendants do not maintain accurate payroll records for Plaintiff and putative Class members in accordance with Minn. Stat. § 177.30(a). The payroll records for Plaintiff and putative Class members do not accurately reflect the actual hours worked or the actual rate of pay.

345.     Defendants are liable to Plaintiff and the putative Classes alleged herein for the penalties described above in an amount according to proof at time of trial. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Minn. Stat. § 177.27, Subdivision 10.

346.     Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided

## TWENTY-FIFTH CAUSE OF ACTION
### Violation of California Business and Professions Code § 17200, *et seq.*

347.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

348.     This claim is brought by Plaintiff on behalf of the California Training Class and the California Tesoro Class against CertifiedSafety and Tesoro.

349.     California Business and Professions Code § 17200, et seq. (the "UCL") prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

350.     Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

351.     Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard

1    and unlawful conditions, and to protect employers who comply with the law from those who attempt

2    to gain competitive advantage at the expense of their workers by failing to comply with minimum

3    labor standards.

4        352.    Defendants have committed acts of unfair competition as defined by the UCL, by

5    engaging in the unlawful, unfair, and fraudulent business acts and practices described in this

6    Complaint, including, but not limited to:

7            a.    violations of Labor Code § 1194 and IWC Wage Order 16-2001 pertaining to

8               payment of wages, including minimum wage, for all hours worked;

9            b.    violations of Labor Code § 510 and Wage Order 16-2001 pertaining to overtime;

10           c.    violations of Labor Code §§ 226.7 and 512 and Wage Order 16-2001 pertaining

11              to meal and rest breaks;

12           d.    violations of Labor Code § 226 regarding accurate, timely itemized wage

13              statements;

14           e.    violations of Labor Code § 2802 regarding indemnification for necessary

15              business expenditures; and

16           f.    violations of Labor Code §§ 201-203.

17       353.    The violations of these laws and regulations, as well as of the fundamental California

18   public policies protecting wages, serve as unlawful predicate acts and practices for purposes of

19   Business and Professions Code §§ 17200 et seq.

20       354.    The acts and practices described above constitute unfair, unlawful, and fraudulent

21   business practices, and unfair competition, within the meaning of Business and Professions Code

22   §§ 17200 et seq.  Among other things, the acts and practices have taken from Plaintiff and the Class

23   wages rightfully earned by them, while enabling Defendants to gain an unfair competitive

24   advantage over law-abiding employers and competitors.

25       355.    Business and Professions Code § 17203 provides that a court may make such orders

26   or judgments as may be necessary to prevent the use or employment by any person of any practice

27   which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent

28

1  Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged

2  above.

3       356.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff

4  and the Class members have suffered a loss of money and property, in the form of unpaid wages

5  which are due and payable to them.

6       357.    Business and Professions Code § 17203 provides that the Court may restore to any

7  person in interest any money or property which may have been acquired by means of such unfair

8  competition.  Plaintiff and the Classes are entitled to restitution pursuant to Business and

9  Professions Code § 17203 for all wages and payments unlawfully withheld from employees during

10  the four-year period prior to the filing of this Complaint.  Plaintiff's success in this action will

11  enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of

12  themselves as well as others similarly situated.  Plaintiff and putative Class members seek and are

13  entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing

14  to them.

15       358.    Plaintiff herein takes upon himself enforcement of these laws and lawful claims.

16  There is a financial burden involved in pursuing this action, the action is seeking to vindicate a

17  public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to

18  pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant to

19  Code of Civil Procedure §1021.5 and otherwise.

20       359.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

21                    **TWENTY-SIXTH CAUSE OF ACTION**
22            **Penalties Pursuant to § 2699(a) of the Private Attorneys General Act**

23       360.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

24  herein.

25       361.    This claim is brought by Plaintiff on behalf of the California Training Class, the

26  California CertifiedSafety Class, and the California Tesoro Class against CertifiedSafety and

27  Tesoro.

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*

362.    Labor Code § 2699(a) provides:

Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees.

363.    Labor Code § 203 provides, in relevant part:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days.

364.    Labor Code § 226(a) provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

365.    Labor Code § 551 provides:

Every person employed in any occupation of labor is entitled to one day's rest therefrom in seven.

366.  Labor Code § 552 provides:

No employer of labor shall cause his employees to work more than six days in seven.

367.  Labor Code § 558(a) provides:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

368.  Plaintiff seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, as alleged above, to timely pay all wages owed to Plaintiff and each putative Class member in compliance with Labor Code §§ 201-202 in the amounts established by Labor Code § 203.  Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 203, as prayed for herein.

369.  Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, alleged above, to provide Plaintiff and each Class member an accurate, itemized wage statement in compliance with Labor Code § 226(a) in the amounts established by Labor Code § 226(e).  Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 226(e), as prayed for herein.

370.  Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, alleged above, to provide Plaintiff and each Class member compliant meal and rest periods in compliance with Labor Code § 512.

371.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each violation of Labor Code § 510, alleged above, as well as any provision regulating hours and days of work in any order of the IWC.

372.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, alleged above, to provide Plaintiff and each Class member one day of rest therefrom seven days of work in compliance with Labor Code §§ 551 and 552.

373.    Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff provided the Labor and Workforce Development Agency ("LWDA") with notice of his intention to file this claim.  Sixty-five calendar days have passed without notice from the LWDA.    Plaintiff satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

374.    Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved employees, and himself as set forth in Labor Code § 2699(g)(i).

375.    Defendants are liable to Plaintiff, the putative Class, and the State of California for the civil penalties set forth in this Complaint, with interest thereon.  Plaintiff is also entitled to an award of attorneys' fees and costs as set forth below.

376.    Wherefore, Plaintiff and the aggrieved employees request relief as hereinafter provided.

## TWENTY-SEVENTH CAUSE OF ACTION
### Penalties Pursuant to § 2699(f) of the Private Attorneys General Act

377.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

378.    This claim is brought by Plaintiff on behalf of the California Training Class, the California CertifiedSafety Class, and the California Tesoro Class against CertifiedSafety and Tesoro.

379.    Labor Code § 2699(f) provides:

> For all provisions of this code except those for which a civil penalty
> is specifically provided, there is established a civil penalty for a
> violation of these provisions, as follows: . . . (2) If, at the time of the
> alleged violation, the person employs one or more employees, the civil

1

2

3

penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

4   380.   To the extent than any violation alleged herein does not carry penalties under Labor

5   Code § 2699(a), Plaintiff seeks civil penalties pursuant to Labor Code § 2699(f) for Plaintiff and

6   Class members each pay period in which he or she was aggrieved, in the amounts established by

7   Labor Code § 2699(f).

8   381.   Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff has provided the LWDA

9   with notice of his intention to file this claim.  Sixty-five calendar days have passed without notice

10  from the LWDA.  Plaintiff satisfied the administrative prerequisites to commence this civil action

11  in compliance with § 2699.3(a).

12  382.   Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved

13  employees, and themselves as set forth in Labor Code § 2699(g)(i).

14  383.   Defendants are liable to Plaintiff, the putative Class, and the State of California for

15  the civil penalties set forth in this Complaint, with interest thereon.  Plaintiff is also entitled to an

16  award of attorneys' fees and costs as set forth below.

17  384.   Wherefore, Plaintiff and the aggrieved employees request relief as hereinafter

18  provided.

19  **<u>PRAYER FOR RELIEF</u>**

20  WHEREFORE, Plaintiff prays for relief as follows:

21  a)  Damages and restitution according to proof at trial for all unpaid wages and other injuries,

22      as provided by the FLSA, California Labor Code, WMWA, MFLSA, MPWA, and other

23      laws of the States of California, Washington, and Minnesota;

24  b)  For a declaratory judgment that Defendants have violated the FLSA, California Labor

25      Code, WMWA, MFLSA, MPWA, the laws of the States of California, Washington, and

26      Minnesota, and public policy as alleged herein;

27  c)  For a declaratory judgment that Defendants have violated the UCL, California Business

28

and Professions Code § 17200 *et seq.*, as a result of the aforementioned violations of the California Labor Code and of California public policy protecting wages;

d) For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

e) For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

f) For an order awarding Plaintiff and the Classes and Collective members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money, actual damages, and all other sums of money owed to Plaintiff and members of the Classes, together with interest on these amounts, according to proof;

g) For an order awarding Plaintiff, Classes, and members of the Collective civil penalties pursuant to the FLSA, California Labor Code, WMWA, MFLSA, MPWA, and the laws of the States of California, Washington, and Minnesota, with interest thereon;

h) For an award of reasonable attorneys' fees as provided by the FLSA, California Labor Code, California Code of Civil Procedure § 1021.5, WMWA, MFLSA, MPWA, the laws of the States of California, Washington, and Minnesota, and/or other applicable law;

i) For all costs of suit;

j) For interest on any damages and/or penalties awarded, as provided by applicable law; and

k) For such other and further relief as this Court deems just and proper.

Dated: March 12, 2019

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell
David C. Leimbach
Michelle S. Lim
Scott L. Gordon
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

Attorneys for Plaintiff, the Putative Classes
and Collective

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

Dated: March 12, 2019

Respectfully submitted,

*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell
David C. Leimbach
Michelle S. Lim
Scott L. Gordon
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

Attorneys for Plaintiff, the Putative Classes
and Collective

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jones v. CertifiedSafety, Inc., et al.*